LYDIA E. PINKHAM MEDICINE COMPANY *vs.* AROLINE P.
GOVE & others.

Essex.   January 7, 1937. — June 30, 1937.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Corporation,* Officers and agents, Foreign. *Equity Jurisdiction,* Suit by
corporation against officer or director, Suit relating to foreign cor-
poration, To enjoin prosecution of proceeding in another State.
*Jurisdiction,* Foreign corporation, Forum non conveniens. *Agency,*
Scope of authority. *Equity Pleading and Practice,* Demurrer; Plea;
Master: exceptions to report.

A demurrer directed to a bill in equity as a whole and not against any
particular part thereof must be overruled if the bill states a cause for
equitable relief on any ground.

A corporation was entitled to maintain a suit in equity against certain
of its officers who acted adversely to the plaintiff's interest from
motives of personal gain and malice, thus causing injury and threaten-
ing further injury to the plaintiff.

In a bill in equity purporting to be brought by a corporation, a signature
in its name "by" one described as its president was enough, without
an averment that the signer had authority to act for the corporation
in bringing suit, to require the overruling of a demurrer asserting that
the bill did not show that the suit was authorized.

A bill in equity by a Maine corporation with its principal place of busi-
ness in this Commonwealth, seeking relief by injunction and damages
against certain of its officers who lived here and were alleged to have
been guilty of specific wrongs toward it, was not demurrable on the
ground that the suit should not be maintained here because it directly
involved the internal affairs of a foreign corporation or because of the
principle of *forum non conveniens.*

Upon an appeal, without a report of evidence, from an interlocutory
decree overruling a plea in a suit in equity which was heard on facts,
no error appeared.

Exceptions to findings in a master's report rightly were overruled where
the evidence before him was not reported and where inferences drawn
by him from his findings were proper.

A corporation, whose directors were deadlocked between two equal
factions, had a cause for relief in equity by injunction and damages
against certain officers of the faction having control of its finances
who for personal gain and with a purpose cheaply to buy out the other
faction and thus gain control, and adversely to the corporation's in-
terest, had suspended well earned dividends, had prevented necessary

advertising, had lent to the corporation at a high rate of interest large unneeded sums of money which they did not permit it to repay, and had threatened as creditors to throw the corporation into receivership.

After the overruling on the facts of a plea to a suit in equity based on an averment that the suit was brought without authority, the same defence could not be insisted upon again at the hearing on the question of the final decree. ·

The president of a corporation, whose business for several years had been conducted under his general supervision, whose by-laws authorized him to perform "the duties usually incident to" that office "and those required of him . . . by vote of the directors" and whose directors voted that he have authority to act as "chief executive officer" and to "exercise general supervision and control over the various departments of the . . . business," had authority, upon a conflict arising between two equal and deadlocked factions, to bring a suit in equity in the name and behalf of the corporation for relief against unlawful acts against its interest on the part of some of its officers in charge of its finances who were of the faction opposing his.

Upon entry of a final decree granting relief, in a suit in equity by a foreign corporation against officers resident here for relief by injunction and damages against wrongs by the defendants toward it, a temporary injunction previously issued enjoining the defendants from prosecuting receivership proceedings against the corporation in the State of its domicil should be dissolved, although it was found in the suit here that such proceedings were brought as one of the means, harmful to the corporation, which were the basis of the suit here.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Essex on February 6, 1936.

Interlocutory decrees appealed from were entered by order of *Crosby,* J. The questions pertaining to the master's report and the final decree to be entered were reserved and reported, without decision, by *Lummus,* J.

*J. W. Worthen,* (*E. B. Cook* with him,) for the plaintiff.

*J. C. Reilly,* (*T. Hunt & F. T. Hammond, Jr.,* with him,) for the defendants.

QUA, J. The plaintiff is a Maine corporation having its principal place of business at Lynn in this Commonwealth. The principal defendants are the treasurer and assistant treasurer of the corporation, who are also directors, and who are residents of this Commonwealth.

The main allegations of the bill in condensed form are these: The stock of the corporation is divided equally into two classes, the "Pinkham stock," owned by members of the Pinkham family and the "Gove stock," owned by mem-

bers of the Gove family. The by-laws provide that the president and a vice-president shall be elected by the holders of Pinkham stock and the treasurer and assistant treasurer by holders of Gove stock; that three of the six directors shall be elected by the holders of Pinkham stock and three by holders of Gove stock; that no vote of the stockholders, except for election of a director, shall be valid unless voted by holders of a majority of each class and that no action of the directors, unless unanimous, shall be valid if vetoed by notice filed within ten days by the holders of a majority of the shares of either class. In 1925 the defendants Aroline P. Gove and Lydia P. Gove, who previously took no active part in the conduct of the business, began efforts to gain exclusive control in wilful disregard of the by-laws and of long established practice, and violent dissensions ensued between them and the Pinkham directors with respect to the conduct of the business in all departments. The defendants Aroline P. Gove and Lydia P. Gove have lent to the plaintiff at various times beginning in 1933 large sums of money at five per cent interest, and as treasurer and assistant treasurer of the corporation, in order to enrich themselves at the corporation's expense, they have refused to repay these loans or to reduce the interest, although the plaintiff had securities which could have been made available for such payment and although, as the defendants well knew, the plaintiff could have borrowed the money elsewhere, paying interest at a small fraction of five per cent, and although in 1935 the net cash income not needed in the business was alone sufficient to pay these loans in full. Instead of repaying the loans to themselves these defendants, in violation of the by-laws, invested over a quarter of a million dollars of the corporation's 1935 income in bonds yielding interest at a rate much lower than five per cent. In violation of the by-laws, they have issued to themselves the corporation's demand notes for these loans, bearing five per cent interest. The bill then describes at length a controversy which has arisen between the defendants Aroline P. Gove and Lydia P. Gove on one side and the president and the Pinkham directors on the

other side as to the kind and amount of advertising to be
done by the corporation, in connection with which it is
averred that the defendants Gove have spent moneys of
the corporation wrongfully and in violation of the by-laws,
and without the knowledge or consent of the board of
directors, have paid wages to employees after the employees
have been discharged, have sent out unauthorized con-
tracts for advertising, have refused to pay for advertising
not personally approved by them, and have interfered in
various ways set forth to prevent the carrying out of a con-
tract for advertising lawfully made by the corporation with
an advertising agency. It is alleged that by the course
of conduct hereinbefore described the defendants have de-
liberately and maliciously obstructed the conduct of the
business and damaged its good will by assuming or attempt-
ing to assume powers not vested in them and by exercising
without regard to the welfare of the corporation such
powers as have been given to them. Said defendants are
conspiring to disrupt the organization of the business and
to destroy its discipline, morale and efficiency, they have
refused to attend any meetings of the directors, have
induced the third Gove director also not to attend, and have
maliciously and unjustifiably prevented the procuring of
quorums at meetings. Their conduct has been actuated
throughout by prejudices and animosities "in a deliberate
refusal to discharge their duties as directors or officers with
judgment and discretion, or to permit any meeting of the
Directors for such purposes." It is further averred that,
for the purpose of forcing Pinkham stockholders to sell
their stock below its fair value, the defendants Gove have
kept the books improperly and have made wrongful and
improper entries in order to make the net surplus appear
less than $1,000,000, so as to evade a by-law provision
requiring payment of dividends.

We need not recite in detail numerous further specific
allegations of unauthorized and wrongful acts on the part
of the defendants Gove. At the end of the bill it is asserted
that these defendants by their conduct intend to benefit
themselves at the expense of the plaintiff and of other

stockholders and to hamper and prevent the conduct of the business by the board of directors and by the duly constituted officers, and to prevent any effective participation of the Pinkham directors in the conduct of the business and any further payment of dividends, all for the express purpose of forcing the Pinkham stockholders to sell their stock to the defendants Gove at prices having no relation to fair value.

A subsequent amendment to the bill alleges that since this suit was brought the defendants Gove caused a suit to be brought in the State of Maine for the appointment of a temporary and permanent receiver for the plaintiff in this suit; that the proceedings in Maine were not brought in good faith, but were brought as a means of combating the present suit and of harassing the plaintiff and are vexatious in character. Upon this amendment the defendants Aroline P. Gove and Lydia P. Gove were enjoined from prosecuting the suit in Maine until further order of this court.

1. There was no error in overruling the defendants' demurrer.* That demurrer was directed against the bill as a whole and not against any particular part thereof. It must fail if the bill states a proper cause of action on any ground. *Carleton & Hovey Co.* v. *Burns,* 285 Mass. 479, 484. No discussion is needed to show that the bill does contain statements of breaches of the fiduciary obligations of the defendants Aroline P. Gove and Lydia P. Gove as directors and officers of the plaintiff, causing injury to the plaintiff and threatening further injury, and therefore proper subjects of a suit in equity by the corporation. *Elliott* v. *Baker,* 194 Mass. 518, 523. *Manning* v. *Campbell,* 264 Mass. 386,

---

* The grounds of the demurrer were as follows:

"1. That the bill is without equity.

"2. That the bill does not set forth facts such as to entitle the plaintiff to any relief in equity against any, or all, of the defendants.

"3. That the bill fails to allege, or show, that it is brought by authority of the plaintiff's board of directors, or of any officer of the plaintiff corporation authorized to bring such a proceeding.

"4. That this bill is plainly a 'suit directly involving the internal affairs of a foreign corporation,' and presents a controversy 'relating in substance to the internal management and control of a foreign corporation' which this court need not, and should not, entertain, and of which it should not assume jurisdiction."

389. *Baker* v. *Allen*, 292 Mass. 169. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 410–411, and cases cited. The bill distinctly charges that the defendants Gove in their capacity as officers of the corporation have knowingly and purposely acted adversely to its interests from motives of personal gain and malice. These are charges of bad faith and breach of trust. *Spiegel* v. *Beacon Participations, Inc.*, *supra*, at page 416.

The bill purports on its face to be brought by the corporation named therein as plaintiff. It is signed in the name of the corporation "by" Arthur W. Pinkham, described as president. It was not necessary in order to escape a demurrer to include express allegations of the authority of the president to bring the suit.

The suit does not, in our opinion, so far involve the internal affairs of a foreign corporation that it ought not to be heard in the courts of this Commonwealth. Although in legal theory the plaintiff is a resident of Maine, its principal place of business is alleged to be in this Commonwealth. All of the defendants are alleged to be residents of this Commonwealth. It is reasonably inferable from the bill that the acts complained of were performed in this Commonwealth and that the evidence, both documentary and oral, relating to them would be more readily available here than elsewhere. For the most part the bill relates to specific wrongs alleged to have been committed by the defendants against the plaintiff for which relief is sought in the ordinary way by injunction and by a decree for damages. No receivership or winding up of the corporation's business is asked for, and none is necessary to accomplish the objects of the bill. Internal affairs of the corporation are involved to some extent, but they are involved more collaterally than directly. They do not seem to us to depend to any considerable degree upon peculiarities of local law. They can be so dealt with as to cause no embarrassment in the event of subsequent litigation in Maine. It is not plain how any suit brought in Maine could result in adequate relief with respect to the subject matters of this bill, even if a receiver should be appointed there. Personal service

upon the defendants is necessary for full relief. They live here. It may be that, as the defendants suggest, no final solution of the difficulties of the plaintiff arising from the disagreements between the Pinkhams and the Goves will be found otherwise than through dissolution and liquidation, which can be accomplished only in Maine. But it is also possible that full relief in the present suit may avoid dissolution and liquidation altogether. The principle of *forum non conveniens* ought to be applied with caution. *Universal Adjustment Corp.* v. *Midland Bank, Ltd. of London*, 281 Mass. 303, 315. *Wineburgh* v. *United States Steam & Street Railway Advertising Co.* 173 Mass. 60. *Richardson* v. *Clinton Wall Trunk Manuf. Co.* 181 Mass. 580. *Andrews* v. *Mines Corp. Ltd.* 205 Mass. 121. *Raynes* v. *Sharp*, 238 Mass. 20, 24. We consider this case distinguishable from *Smith* v. *Mutual Life Ins. Co.* 14 Allen, 336, *New Haven Horse Nail Co.* v. *Linden Spring Co.* 142 Mass. 349, *Kimball* v. *St. Louis & San Francisco Railway*, 157 Mass. 7, *Wason* v. *Buzzell*, 181 Mass. 338, and *Wright* v. *Post*, 268 Mass. 126, cited by the defendants.

2. What has just been said with reference to the demurrer applies equally to the defendants' "Motion to Decline Jurisdiction."

3. There is nothing to show error in the interlocutory decree overruling the defendants' plea. The plea appears to have been heard on the facts and disproved. There is no report of the evidence, except that it was agreed that for the purposes of the plea all allegations in the bill were true and that within ten days after the filing of the bill in this suit a majority of the holders of Gove stock (presumably purporting to act under a provision of the by-laws hereinafter mentioned) filed a notice with the secretary of the corporation objecting to the filing of the bill. Plainly these bare facts, standing alone, with nothing to show what, if any, other evidence was introduced, did not as matter of law require that the plea be sustained. *Brogna* v. *Commissioner of Banks*, 248 Mass. 241, 243. *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 215. *Milne* v. *Walsh*, 285 Mass. 151, 153.

4. The defendants' exceptions to the master's report, in so far as they have not been waived, must be overruled. All of them are directed against certain findings of the master. The evidence is not reported. We have no means of determining that the findings are wrong, except in so far as they are expressly stated to be inferences from other findings. We believe that such inferences were proper in view of other findings in the report. We cannot say that any of the findings complained of is immaterial to issues raised by the bill.

5. We come next to the final decree which should be entered upon the pleadings and the master's report. In general it may be said that the answers to the bill and to the amendment admit the formal allegations of the bill as to classification of the capital stock and the provisions of the by-laws. No issue is raised as to the reasonableness or validity of the peculiar by-laws designed to preserve equal control in each of the two families. We need not determine these questions. Both factions have acted in recognition of these by-laws. The defendants also admit the making of loans by the Goves to the corporation at five per cent interest and the existence of a controversy with regard to advertising and of a "deadlock" between the Goves and the Pinkhams with respect to the management of the corporation. The master's report is too long to be restated here. In general his findings support the contentions of the plaintiff. Among the more important findings are these: The defendant Aroline P. Gove is an elderly lady. She relies largely upon the decisions of her daughter, the defendant Lydia P. Gove, who is energetic and dominating. The defendant Lydia P. Gove, upon the death of her brother in 1925, told the president "that she was going to take charge of the general advertising and purchasing and printing departments. Upon being asked by what authority, she replied that she considered that she had inherited these departments from her brother." She undertook to make radical changes in the advertising, of which the president generally disapproved. This dispute has continued from time to time. The Gove directors refused to attend meet-

ings, and no agreement could be reached. In December, 1935, the president, Arthur W. Pinkham, made an advertising contract with Erwin Wasey Company. The Goves prevented performance of this contract and consequently advertising is at a standstill. The Goves refused to pay off loans made by them to the corporation at five per cent interest, although the corporation held securities in its surplus sufficient in amount to make payment, which were yielding not more than three per cent. Or the corporation could have borrowed the necessary amount at not more than one per cent, using some of the securities as collateral. Lydia P. Gove refused to do anything about it, and the defendants Gove, notwithstanding the protests of the Pinkhams, caused interest to be paid to the Goves at five per cent. The defendants "were not acting for what they believed to be the welfare of the corporation as such, but were acting for their individual benefit at the expense of the corporation. Their refusal was based on a plan to retain an excellent investment for themselves, as well as to retain a large creditor position toward the corporation, which they could use in the event that they decided to threaten or bring a receivership petition as a means of acquiring the Pinkham stock." Lydia P. Gove desires to acquire all or some of the Pinkham stock, and so to gain control of the corporation. She "has on various occasions expressed to the Pinkhams or others a desire to acquire the Pinkham stock, and an intent to force or induce them, by the withholding of dividends or by other means, to sell to her. In September, 1934, Lydia Gove stated to Arthur Pinkham that she was going to run the business, and that the Pinkhams must stop interfering with her doing so, or must sell out their interest; that if they would do neither, she would get herself appointed receiver, as, she stated, she could do, inasmuch as the company owed her a lot of money." The position taken by the Goves in regard to advertising "is not based upon their judgment as to what is for the best interest of the corporation and of the stockholders as a whole, but . . . is traceable to a desire, clearly entertained, of acquiring the Pinkham stock, and of depriving the Pink-

hams for the time being of dividends as a means of doing so. Upon the evidence . . . it appears that an expenditure of 80% of the gross sales upon advertising cannot reasonably be expected to result in anything but a deficit for the corporation. It appears from the evidence that Lydia Gove is a woman of intelligence . . . that she has a desire to acquire the Pinkham stock, and the intent to use such means as are at hand for doing so. She has referred to her belief that the Pinkhams were dependent upon dividends from the company and would be greatly embarrassed by not receiving them; and has stated that her own financial condition is such that the receipt of dividends is largely a matter of indifference to her, and that this situation could be used to force the Pinkhams to sell her their stock. With this object in view, the position that Lydia Gove has taken with regard to the present advertising expenditures of the company is readily explainable." It was and is the object of the defendants Gove to embarrass the Pinkhams by withholding the payment of dividends. Reference will be made to other findings in connection with matters hereinafter discussed.

These findings make it plain that the defendants Aroline P. Gove and Lydia P. Gove in their capacities as treasurer, assistant treasurer and directors of the plaintiff have violated their fiduciary obligations toward the plaintiff, and that they have acted in excess of their authority and used their official positions in the corporation to the detriment of its interests from motives of personal advantage and in order to compel a sale of the Pinkham stock. The plaintiff is entitled to a decree against them for injunctive relief and for damages and costs. *United Zinc Co.* v. *Harwood,* 216 Mass. 474, 476. *Allen-Foster-Willett Co., petitioner,* 227 Mass. 551. *Albert E. Touchet, Inc.* v. *Touchet,* 264 Mass. 499, 507. *L. E. Fosgate Co.* v. *Boston Market Terminal Co.* 275 Mass. 99, 107. *European & North American Railway* v. *Poor,* 59 Maine, 277. *Hyams* v. *Old Dominion Co.* 113 Maine, 294, 307.

The bill should be dismissed as to the defendant Renehan,

against whom nothing substantial has been shown, with costs to her.

The defendants cannot, on the entering of a final decree, urge their contention that the plaintiff corporation did not authorize the bringing of this suit. This defence was set up by them in their plea, which after hearing has been disproved. The same defence is not open to them again. Under general chancery practice, when a plea was disproved on the facts, the result was the same as if the entire bill had been taken for confessed. *Kennedy* v. *Creswell*, 101 U. S. 641. *Miller* v. *United States Casualty Co.* 16 Dick. (N. J.) 110, 117. Modern relaxation of this rule does not go to the extent of permitting a defence based on facts found not true upon a hearing on a plea to be insisted upon again thereafter. *Reynolds* v. *Missouri, Kansas & Texas Railway*, 228 Mass. 584. *Choate* v. *Sharon*, 259 Mass. 478, 483. *Foster* v. *Foster*, 51 Vt. 216. *Miller & Lux* v. *Rickey*, 146 Fed. 574, 576.

Even if this were not so, we should be inclined to hold that the authority of the president to bring the suit had been established. This is not a case where authority depends merely upon the holding of the office as in *Mahone* v. *Manchester & Lawrence Railroad*, 111 Mass. 72, *Ellsworth Woolen Manuf. Co.* v. *Faunce*, 79 Maine, 440, and other cases cited by the defendants. *Horowitz* v. *S. Slater & Sons, Inc.* 265 Mass. 143, 147. Arthur W. Pinkham had been unanimously elected president at a meeting of the directors in 1921. He "took principal charge of the conduct of the business," with the assistance of his two brothers, who were Pinkham directors, and William P. Gove, now deceased. The by-laws provided that the president should perform "the duties usually incident to the office of president, and those required of him by law, by these by-laws, or by vote of the directors." In June, 1927, after the controversy over advertising had begun, and when for a time the by-laws were so changed as to provide for a seventh or independent director as a means of overcoming the differences between the contending factions, the directors passed the following vote:

"After some discussion as to the advisability of having executive authority vested in the President of the Company and thus avoiding conflict and lack of united action in the various departments of the Company's business, it was voted: That the President of the Company as its chief executive officer, is hereby authorized and instructed to exercise general supervision and control over the various departments of the Company's business, to hire and discharge all employees therein and to issue such directions as in his judgment are proper from time to time to carry out the votes of the Board of Directors." This vote superseded any previous votes of the directors inconsistent with it. So far as appears the president has acted under it since it was passed. Amendments to the by-laws in 1932 did not have the effect of repealing this vote, and it is found by the master that from 1932 until 1935 the business was conducted under the general supervision of the president. The vote must be interpreted in the light of the previous history which had led to its adoption and in such a way as to accomplish fully the purpose expressed in the vote itself. These considerations require a liberal construction. The vote speaks of "executive authority" in general terms and mentions the president as the "chief executive officer." We cannot adopt the contentions that the reference to "the various departments of the Company's business" and the reference to carrying out "the votes of the Board of Directors" were intended as limitations. It seems to us that the intent of the vote was to give the president general charge of the business as a whole, subject of course to the power of the directors to give specific directions from time to time or to modify or recall the grant. We have no doubt that the directors could do this. *Hartford* v. *Massachusetts Bowling Alleys, Inc.* 229 Mass. 30. *Gerrish Dredging Co.* v. *Bethlehem Shipbuilding Corp. Ltd.* 247 Mass. 162. *Henderson* v. *Raymond Syndicate,* 183 Mass. 443, 446. *Jones* v. *Williams,* 139 Mo. 1. *Watson* v. *Proximity Manuf. Co.* 147 N. C. 469, 475. *Castle* v. *Belfast Foundry Co.* 72 Maine, 167, 170. *Braman, Dow & Co.* v. *Kennebec Gas & Fuel Co.* 117 Maine, 291. *Gilman* v. *F. O. Bailey Carriage Co. Inc.*

127 Maine, 91, 96. Compare *Horowitz* v. *S. Slater & Sons, Inc.* 265 Mass. 143, 147.

If this suit were brought in the ordinary course of business, we should have no doubt of the authority of the president to bring it. *Bristol County Savings Bank* v. *Keavy,* 128 Mass. 298, 302. *Frost* v. *Domestic Sewing Machine Co.* 133 Mass. 563. *Trustees of Smith Charities* v. *Connolly,* 157 Mass. 272, 275. *Alden Bros. Co.* v. *Dunn,* 264 Mass. 355, 361. *Goodenough's Admx.* v. *Vermont-People's National Bank,* 106 Vt. 5. The law of Maine seems to be no different from our own. Thus in *New Gloucester* v. *Bridgham,* 28 Maine, 60, 66, the court says, "Whenever the court sees reason to believe, that, those prosecuting in behalf of a corporation, have a general superintendence over the subject matter in litigation, they will allow them to appear and prosecute, without any special vote for the purpose." *Bangor, Oldtown & Milford Railroad* v. *Smith,* 47 Maine, 34, 44. *Bangor Savings Bank* v. *Wallace,* 87 Maine, 28, 32–33. The doubt here arises from the peculiar nature of this suit as directed against officers of the corporation and as arising out of the existence of two factions equally powerful in ownership and control. And yet it is apparent that some of the wrongs complained of directly affected the management of routine affairs of the business and the others must have affected that management substantially, even if indirectly. The peculiar situation made it necessary for the president to act, if he was to continue to carry out effectively the powers clearly delegated to him. Am. Law Inst. Restatement: Agency, § 35. As an officer of the corporation he was under a duty to act. *Commonwealth* v. *Dow,* 217 Mass. 473, 479. *Prudential Trust Co.* v. *Moore,* 245 Mass. 311, 315. We think that the power to institute this suit as the suit of the corporation under these unusual circumstances was delegated with the general grant of managerial power and that the president was not obliged to resort to the indirect method of a stockholders' bill to accomplish the same results.

The attempted veto of the act of the president in bringing this suit by means of notice given by a majority of the

holders of Gove stock purporting to act under article III, § 5, of the by-laws was inoperative, as § 5 by its terms relates only to the action of officers or agents elected under the provisions of § 4, and the president is not so elected.

*A fortiori* it was within the power of the president acting as manager of the business to make reasonable contracts for advertising.

Upon the entering of the final decree the temporary injunction restraining the defendants Gove from further prosecuting their suit in Maine should be dissolved. The master finds that that suit was brought for the purpose of inducing the Pinkhams to sell their stock and for the purpose of ultimately acquiring the business through receivership and that the immediate cause of that suit was the bringing of this present suit and the refusal by the Pinkhams of an offer of the Goves to buy the Pinkham stock. But it does not necessarily follow that the suit in Maine is vexatious or fraudulent or a wrong against the plaintiff corporation. The plaintiff is incorporated in Maine, and the jurisdiction to dissolve it and finally to wind up its affairs resides there and not here. *Richardson* v. *Clinton Wall Trunk Manuf. Co.* 181 Mass. 580, 581. The motives of these defendants in bringing their suit in Maine may not be decisive against their right to maintain it. Although this court has power to act *in personam* upon residents of this Commonwealth to such extent as may be necessary to restrain them from prosecuting in another State a suit which unduly and inequitably interferes with the progress of litigation here or with the establishment of rights properly justiciable here, *Dehon* v. *Foster*, 4 Allen, 545, *Columbian National Life Ins. Co.* v. *Cross*, *ante*, 47, we ought not so to exercise our own jurisdiction as to deprive these defendants permanently of access to the tribunal which alone can determine whether their prayers should be granted. See *Carson* v. *Dunham*, 149 Mass. 52.

It does not seem practicable at this time to attempt to state in detail the terms of the final decree. That decree must deal with many instances of wrongful conduct on the part of the defendants Gove, differing from each other and

yet all related in various ways to the matters herein discussed and decided. Probably some of the plaintiff's claims will no longer be contested. Questions may arise in relation to others. Some may involve computation of charges and credits. As to some it is conceivable that further findings may be required. Few of these questions have been fully argued on both sides. The court and the parties should have the benefit of such further hearing as may be necessary to the preparation of a fair, complete and accurate decree.

All interlocutory decrees appealed from are affirmed. An interlocutory decree is to be entered overruling the defendants' exceptions to the master's report and confirming that report, and the case is to stand for further proceedings in the county court not inconsistent with this opinion.

*Ordered accordingly.*