# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

---

LYDIA E. PINKHAM MEDICINE COMPANY *vs.* AROLINE P. GOVE & others.

Essex.   October 5, 1938. — April 12, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Corporation*, Officers and agents, Dividend, By-laws. *Interest.* *Equity Jurisdiction*, To compel declaration of corporate dividends. *Equity Pleading and Practice*, Parties, Injunction.

Breaches of trust toward a corporation by its treasurer and assistant treasurer did not require them, in a suit by the corporation, to repay to it large sums which they had received as salaries over a period of five or six years where it appeared that under the by-laws of the corporation sums paid officers were not in the ordinary sense to be compensation for services rendered but were merely to secure equality between two factions of stockholders, and that no protest against the payments and no specific claim of right to recover them had been made until by an amendment after a decision in the suit by this court favorable to the corporation on the question of the defendants' conduct.

A corporation was not entitled to recover from its treasurer and assistant treasurer sums paid by them for advertising with a motive to further their personal ends and not to benefit the corporation where it appeared that such expenditures were made with the assent of the managing officer of the corporation acting with full information and voluntarily, although reluctantly, in good faith upon his own judg-

ment and not under the influence of or in collusion with the defendants; but it was entitled to recover sums paid by the defendants without authority, even if they were paid in good faith and the corporation received some benefit therefrom.

The treasurer and assistant treasurer of a corporation were required to repay to it sums paid themselves as interest on unnecessary loans which they had made to it and which they wrongfully and in bad faith had refused to pay off; and they were not entitled to any credit against the corporation's claim by reason of any incidental benefit which it might have derived through not having had to repay the loans.

A corporation entitled in a suit in equity to recover from an officer sums of its money wrongfully paid out by him, the precise dates of the payments not having been ascertained, was awarded interest on the sums from a certain date by which time all of them had been paid.

A corporation was entitled to maintain a suit in equity to compel certain of its directors to vote for a declaration of dividend in compliance with the provisions of a valid by-law which, in circumstances shown to exist, required the declaration, where it appeared that the defendants by refusing in bad faith so to vote were preventing the declaration.

A by-law of a corporation providing in substance that its surplus should not be accumulated or maintained above a specified amount, and that, until it was reduced to that amount, dividends in a certain amount per share per year should be declared, payable each month for ten months beginning in March and paid out of current net earnings so far as they should be sufficient for that purpose and the balance so far as necessary out of the surplus, and that thereafter, so far as consistent with the maintenance of the surplus in the specified amount, dividends should be paid "to the amount of the" net earnings, was a reasonable regulation of the shareholders' rights to receive dividends and was valid.

The requirement of a by-law of a corporation that dividends should be declared and paid "in ten equal payments each year" on the first day of each month except January and February presupposed the ascertainment before the first day of March in each year of a fixed sum, based on the then existing financial condition of the corporation, as the amount, in excess of the amount required to maintain a specified surplus, "of the net earnings" which was to be divided in equal payments during that year.

Upon reservation for determination by this court of a suit in equity by a corporation against officers who had acted in bad faith to its detriment, a decree was ordered giving relief by injunction broad enough to prevent recurrence in the future of the wrongs found to have been already committed by them and to forestall other or further wrongs which the proof showed to have been threatened or which the previous conduct of the defendants indicated as likely to be committed, but not extending beyond the scope of the bill, reasonably construed, nor prohibiting acts which there was no reasonable ground to fear would be committed.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Essex on February 6, 1936, and afterwards amended.

The suit was reserved by *Qua*, J., after proceedings following the decision reported in 298 Mass. 53.

*J. W. Worthen*, (*E. B. Cook* with him,) for the plaintiff.

*L. Withington*, (*J. S. McCann* with him,) for the defendants.

QUA, J.  When this suit came before the full court upon a previous occasion (*Lydia E. Pinkham Medicine Co.* v. *Gove*, 298 Mass. 53) we held that no error had been shown in overruling the defendants' demurrer to the bill and the defendants' plea; that the defendants' exceptions to the master's first report must be overruled; that the plaintiff was entitled to injunctive relief and to damages and costs against the defendants Aroline P. Gove and Lydia P. Gove; that the bill should be dismissed as to the defendant Renehan, with costs to her; and that upon the entering of the final decree the temporary injunction restraining the defendants Gove from further prosecuting their suit in Maine for the appointment of a receiver of the plaintiff should be dissolved. We then stated in substance that further hearings upon various matters would be necessary before the details of a final decree could be settled and ordered the case to stand for further proceedings in the county court.

Thereafter the cause was recommitted to the master for further findings of fact, and both his first report and his supplemental report have been confirmed. A stipulation on file discloses that some of the grievances of which the plaintiff complained have been remedied, and certain sums have been paid to the plaintiff by the defendants Gove. Other issues remain to be determined, including that raised by the contention of the plaintiff, added by amendment to the bill since the former opinion, to the effect that the defendants Gove have been guilty of such breaches of trust as officers of the plaintiff that they have forfeited their right to retain the salaries paid to them by the plaintiff since January 1, 1933. We shall deal in turn

with the several questions remaining, beginning with that introduced by the amendment.

1. The fiduciary relation of a general corporate officer to the corporation whose affairs are in part at least entrusted to his care is universally recognized. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 298 Mass. 53, 62, and cases cited. A trustee who commits a breach of trust or an agent who is guilty of disloyal conduct thereby imperils his right to compensation. *Quinn* v. *Burton*, 195 Mass. 277, 279. *Little* v. *Phipps*, 208 Mass. 331, 333–334. *Lamdin* v. *Broadway Surface Advertising Corp.* 272 N. Y. 133. There are cases in which this principle has been applied to deny all salary to officers of corporations whose official acts have been tainted with bad faith. *Eaton* v. *Robinson*, 19 R. I. 146. *Hinkley* v. *Sagemiller*, 191 Wis. 512. *Munro* v. *Smith*, 259 Fed. 1, 21, 22. *Backus* v. *Finkelstein*, 23 Fed. (2d) 357, 360–361. *Flint River Pecan Co.* v. *Fry*, 29 Fed. (2d) 457, 459. The plaintiff makes a strong argument for its application in this case. But the rule is not an inflexible one. Each case must be determined in the discretion of the court with reference to the peculiar factors found to be present. Although pure considerations of public policy have no doubt weighed heavily against fiduciaries who have placed selfish interest above duty, yet the American Law Institute finds the basis for refusal of compensation to a trustee, not in the theory of a penalty, but in the theory that payment is not due for services not properly performed. Am. Law Inst. Restatement: Trusts, § 243, Comment a. Apparently upon similar reasoning, a disloyal agent may have compensation which is "apportioned" by the contract of employment to services properly performed. Am. Law Inst. Restatement: Agency, §§ 456, 469.

One of the peculiar factors in the present case is that the salaries paid to officers were not compensation for services in the ordinary sense at all. They were governed by this provision of the by-laws: "Such compensation and salaries shall be so adjusted and apportioned that there shall be an equality between the aggregate salaries received by officers

of the company who are the holders of Gove stock and the aggregate salaries received by officers of the company who are holders of Pinkham stock." It was further provided that the compensation or salaries of Gove officers should be apportioned among them by vote of the Gove directors; that the compensation or salaries of Pinkham officers should be apportioned among them by Pinkham directors; and that, unless the full board of directors voted otherwise unanimously, the aggregate compensation and salaries of officers holding each class of stock should not be less than $20,000 per annum. For many years these or somewhat similar provisions have been in effect. Their obvious purpose is to insure to each of the two family factions between which the ownership and control of the plaintiff corporation are divided an equal share in that part of the corporate distributions which is paid out under the designation of compensation or salary, just as the equal division of the stock insures an equal share in the dividends. These provisions were also, no doubt, intended to secure to each faction a minimum annual income from the business not subject to the variations attending the receipt of dividends. The defendant Aroline P. Gove is a woman over eighty years of age. She is a daughter of the original founder of the business. She is treasurer of the plaintiff and as such receives a salary of $20,000 per year. She relies upon the decisions of her daughter, the defendant Lydia P. Gove. The latter is active, energetic, and dominating. She receives $7,000 a year as assistant treasurer. Each receives $1,000 a year additional as a director. It is hardly possible that these several sums bear or were intended to bear any genuine relation to compensation for services rendered.

Another factor entitled to some consideration is that at no time did the president, who belonged to the Pinkham faction, and who under a vote of the directors passed June 7, 1927, had the powers of a general manager (*Lydia E. Pinkham Medicine Co.* v. *Gove*, 298 Mass. 53, 63–64), or the directors, or any person connected with the company, object formally or informally to, or protest against, the continued payment of these salaries, and no specific

claim of the right to recover them was made until after the former decision of this court. Although it is true that a protest might have been useless, and that failure to protest might not amount to a waiver of the rights of the plaintiff, yet it seems to us that such long and complete silence upon the matter of salaries by all parties interested amid the din of conflict over so many other matters is not wholly without significance as confirmatory proof that the salary payments were something other than "compensation" for "services" rendered in bad faith.

On the whole, while admitting the force of contrary considerations, and ·with some hesitation, we think that, in this case, to require the defendants Gove to repay to the plaintiff salaries received over an entire period of between five and six years, amounting at the date of the filing of the amendment to more than $150,000, without including interest, would be more nearly analogous to the deprivation of property rights incident to the holding of Gove stock than to the restitution of money wrongfully obtained for faithless services; that it would be in conflict with the true theory upon which a fiduciary who has been guilty of breach of trust should be required to surrender his compensation; and that it would, in effect, be imposing upon these defendants a penalty disproportionately harsh under all the circumstances.

In *Daniels* v. *Briggs*, 279 Mass. 87, an officer of a corporation was allowed his salary up to a reasonable amount, although he had issued a stock certificate to himself in a transaction described as "tainted," and in *Sagalyn* v. *Meekins, Packard & Wheat Inc.* 290 Mass. 434, directors were deprived only of the excess of salary received above the fair value of their services, although they had been guilty of a breach of fiduciary duty for personal profit and not merely of an error of judgment. (Page 439.) See *Meyer* v. *Fort Hill Engraving Co.* 249 Mass. 302; *Stratis* v. *Andreson*, 254 Mass. 536.

2. The plaintiff is not entitled to recover from the defendants Gove a sum of approximately $248,000 which it contends was a loss suffered by it because of the Goves'

insistence in bad faith upon excessive expenditures for advertising in the years 1933 and 1934. The master reports as to those years that "Notwithstanding the fact that the sales were greater in 1933 and 1934 than they had been in 1931 and 1932, when the company made large profits, the company lost money, as it had done in 1930 [when also there were large expenditures for advertising], losing $99,412.11 in 1933 and $148,983.58 in 1934," and that "In 1933 and 1934, upon the insistence of Lydia Gove, larger amounts were again spent on advertising, causing large deficits for those years, yet the sales for 1935 were less than they had been for any year since 1917." It is hard to construe these statements as equivalent to a finding that the sums mentioned were permanently lost in their entirety. Such a construction assumes that moneys expended in the years 1933 and 1934 had no cumulative effect in building up an advertising momentum and in promoting sales in succeeding years. Although the master finds that these and other figures, "so far as they go, confirm other evidence that the results to be at this date in the history of the company expected from advertising are largely current," he also makes findings in his supplemental report indicating that advertising has some long term value. As a matter of common knowledge it would seem that this must be true.

But there is a reason why the plaintiff cannot prevail on this point quite aside from the difficulty in ascertaining the amount of loss. The Pinkhams assented to the excessive expenditures. One of the Pinkhams who assented was the president, who under the vote of June 7, 1927, had the powers of a general manager. He had "general supervision and control" over the advertising in the absence of specific direction by the board of directors. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 298 Mass. 53, 64. There were no votes of the directors controlling the advertising in 1933 and 1934. The assent of the president to the Goves's advertising program was therefore the assent of the plaintiff. It is not less binding upon the plaintiff because given reluctantly. The possibility that the Goves,

through their control of payments from the treasury, might resort to obstructive tactics if the president did not assent, does not, without more, prove that he acted under duress. *Willett* v. *Herrick,* 258 Mass. 585, 603. *Freeman* v. *Teeling,* 290 Mass. 93, 95. The assent was not obtained by deceit. It seems clear that the president must have been personally familiar with all the elements properly bearing upon the determination from the standpoint of the plaintiff's interests of the amount of money that ought to be spent for advertising. He and not the Goves had the power to act. As we read the master's findings, the president did not merely ratify steps already taken by the Goves. So far as appears it was his assent given in advance which committed the corporation to the program. If, as the plaintiff contends, the president did not then know of the improper motive of the Goves to obtain control of the Pinkham stock through depriving the Pinkhams of dividends by means of excessive expenditures for advertising, we think that, under the circumstances, his lack of knowledge of their state of mind as to enlarging their personal holdings of stock is of no consequence as long as he did know all the material factors upon which to form an opinion whether or not the proposed advertising would be profitable to the corporation, and as long as he freely exercised his own judgment and was not overborne, even if he was reluctant. There is no finding that he did not exercise freely his own judgment. See *Union Pacific Railroad* v. *Credit Mobilier,* 135 Mass. 367. But it does not affirmatively appear that the president did not know of the motive of the Goves when the plan was adopted. We think that if lack of such knowledge was material the burden was upon the plaintiff to prove lack of knowledge as well as any other fact necessary in order to avoid the effect of the president's assent as an act binding upon the plaintiff.

In our opinion the findings show that the decision fixing the expenditures for advertising for 1933 and 1934 was the plaintiff's own decision, made through a duly authorized officer (the president), fully informed and acting volun-

tarily in good faith upon his own judgment and not under the influence of or in collusion with the defendants Gove. Hence the plaintiff cannot recover for any loss that may have resulted from that decision.

3. The plaintiff is entitled to recover from the defendants Gove the sum of either $21,755.61 or $20,755.41 which those defendants paid out for advertising in 1935 in excess of an amount previously agreed upon between Lydia P. Gove and the Pinkhams, including the president. The plaintiff has expressly waived its right to recover a still further excess of about $11,000. The defendants Gove in their capacities as treasurer and assistant treasurer were custodians and disbursing officers whose duty it was to keep safely the moneys of the corporation and to pay them out solely upon the order of the directors or other officers having the power to direct payments. *Brown* v. *Weymouth*, 36 Maine, 414. *Taylor* v. *Taylor*, 74 Maine, 582, 584–585. *Blackwell* v. *Saddleback Lumber Co.* 129 Maine, 270, 275. See *Cashin* v. *Corporation Finance Co.* 251 Mass. 60. They had no authority to determine advertising programs and no power to expend money beyond limitations imposed by the president or directors. They must reimburse the plaintiff for sums paid without authority. *Von Arnim* v. *American Tube Works*, 188 Mass. 515, 519. *Dolphin* v. *A. C. Lewis Leather Co.* 269 Mass. 132, 147. *Peterborough Railroad* v. *Wood*, 61 N. H. 418. That the payment was made in good faith and that the plaintiff received some benefit from it are alike immaterial. The unauthorized payment in itself creates the liability. *Goodwin* v. *Simpson*, 292 Mass. 148, 153. To hold otherwise would be to transfer the control of policy and the power of management to the treasurer.

There seems to be a clerical error in the master's report which leaves it doubtful whether this item should be $21,755.61 or $20,755.41. If the parties cannot agree, the cause may be recommitted to the master to resolve the doubt.

As the precise dates when these sums were paid do not appear, and as the master has not included interest in his

report, interest will be added from the first day of January, 1936, by which time, as we construe the report, the entire sum had been expended. Young v. Winkley, 191 Mass. 570, 575. Earle v. Whiting, 196 Mass. 371, 372.

4. The plaintiff is entitled to recover from the defendants Gove the sum of $15,770.81, being so called interest paid by them out of funds of the plaintiff to themselves and others on loans made to the plaintiff by them and others whom they represented. This "interest" is for a period after these defendants had wrongfully refused as treasurer and assistant treasurer to pay off the loans, and while they were insisting upon trying to keep the loans alive in bad faith and for their own personal advantage as set forth in Lydia E. Pinkham Medicine Co. v. Gove, 298 Mass. 53, at page 61. This sum includes $54.95 "interest" for part of 1934 on loans of $38,500 which the master finds were not necessary to the business and not approved by the Pinkhams. As these "interest" payments were wrongful diversions of the plaintiff's money, the plaintiff is also entitled to interest on them from the several dates of payment, but as these dates have not been reported, interest will be calculated on the item of $54.95 from January 1, 1935, and on the remainder from January 31, 1936, by which date the full amount of $15,770.81 had been paid. The defendants Gove are personally liable for this entire sum which they took, although eventually some of it may have come to others for whom they acted in a representative capacity. Lovejoy v. Bailey, 214 Mass. 134, 157.

The defendants Gove are not entitled to a credit against this charge on the theory that by reason of their failure to pay the loans when they should have paid them the plaintiff continued to receive income on securities in its surplus account which it would have been obliged to sell if payment had been made, or on the alternative theory that the plaintiff saved interest which it would have had to pay on money which it would have had to borrow if payment had been made without selling securities. The defendants Gove as fiduciaries who have committed a breach of trust for their own advantage must return their wrong-

ful gains without inquiry into considerations of this kind. The breach of trust was the taking of the "interest" which they paid to themselves and to those whom they represented. They were not entitled to pay themselves and those whom they represented interest for a period after they should have repaid the principal. When they took this so called interest, while at the same time retaining intact their choses in action for the full amount of the principal, they were in effect guilty of conversion of the sums taken as "interest." "A fiduciary who has acquired a benefit by a breach of his duty as fiduciary is under a duty of restitution to the beneficiary." Am. Law Inst. Restatement: Restitution, § 138. "Where a person in a fiduciary relation to another acquires property, and the acquisition or retention of the property is in violation of his duty as fiduciary, he holds it upon a constructive trust for the other." *Id.* § 190. See also Am. Law Inst. Restatement: Trusts, § 205. Directors of a corporation who have committed a breach of their fiduciary obligation are bound to make restitution of any resulting profit to themselves. *Manning* v. *Campbell,* 264 Mass. 386, 390. *Baker* v. *Allen,* 292 Mass. 169, 173. As to the liability of these defendants for interest on the sums wrongfully taken, see Am. Law Inst. Restatement: Restitution, § 156. See also on this subject in general *Bowen* v. *Richardson,* 133 Mass. 293, 296; *Ball* v. *Hopkins,* 268 Mass. 260, 269. It seems to us immaterial that at the time when these defendants were wrongfully taking sums of money from the plaintiff, the plaintiff derived some incidental advantage from the fact that these defendants saw fit not to have the plaintiff pay them other moneys which they could have demanded, but which they allowed to remain unpaid until later. To allow the suggested credits would be to allow these defendants to retain part of their wrongful gains.

5. The plaintiff is entitled to have the defendants Gove as directors join in declaring dividends in compliance with a by-law of the plaintiff which reads as follows: "The net surplus of the company shall not be accumulated or maintained to an amount exceeding $1,000,000. Until the net

surplus is reduced to $1,000,000 dividends shall be declared and paid to the stockholders out of the current net earnings of the company so far as the same shall be sufficient for that purpose, and the balance, so far as necessary, out of the net surplus of the company, at the rate of $3,000 per share per annum payable in ten equal payments on the first day of each calendar month except January and February. Thereafter so far as consistent with the maintenance of a net surplus of $1,000,000 and unless otherwise voted unanimously by the full board of directors, dividends shall be declared and paid to the amount of the net earnings of the company in ten equal payments each year as above provided." The surplus was "reduced to $1,000,-000" but now again exceeds that amount, and the defendants Gove in bad faith and as one means of compelling the Pinkhams to sell their stock have in times past refused to join in declaring dividends.

A question might be raised as to whether the plaintiff is a proper party to seek relief of this kind, inasmuch as it is not shown to have suffered pecuniary loss or damage in its property through the retention of money that ought to have been paid out as dividends. Nevertheless we think it can fairly be held that a corporation has a cause of action when a command like this embodied in its organic law has been violated by its officers. One of the objects of the corporation's existence is to earn money for its stockholders. It is not devoid of interest in the orderly conduct of its affairs. It cannot be wholly indifferent to the continuance of a deadlock which results in one half of its ownership being wrongfully deprived of the income that belongs to the shares. Such a situation is bound to have repercussions affecting the well-being and the future prospects of the corporation itself. So far as we can discover all the decisions recognizing the right to compel the declaration of dividends agree that a shareholder cannot sue without first attempting to move the corporation, unless such attempt would be useless, and that the corporation is at least a proper party to a suit brought by a shareholder. Indeed, it has been asserted more than once that the shareholder's right to have a dividend

declared is wholly derivative, and that any suit that he may bring should be brought in behalf of the corporation as for a wrong to the corporation itself. *Laurel Springs Land Co.* v. *Fougeray,* 5 Dick. (N. J.) 756, 760. *Maeder* v. *Buffalo Bill's Wild West Co.* 132 Fed. 280, 284. *NY PA NJ Utilities Co.* v. *Public Service Commission of New York,* 23 Fed. Sup. 313, 314. Morawetz, A Treatise on the Law of Private Corporations (2d ed.) §§ 235, 277. See *Wells* v. *Dane,* 101 Maine, 67, 70–71.

We do not intend to intimate that a bill brought by a stockholder for the benefit of all stockholders would not lie. Such bills have succeeded for this purpose in other jurisdictions. *Stevens* v. *United States Steel Corp.* 2 Robb. (N. J.) 373. Probably in most instances practical considerations will make this course necessary, as it will seldom happen that a corporation whose directors refuse to declare dividends will itself bring suit. And see *Williston* v. *Michigan Southern & Northern Indiana Railroad,* 13 Allen, 400, 406; *Lee* v. *Fisk,* 222 Mass. 418; *Fernald* v. *Frank Ridlon Co.* 246 Mass. 64; *Thomas* v. *Laconia Car Co.* 251 Mass. 529; *Morse* v. *Boston & Maine Railroad,* 263 Mass. 308; *Joslin* v. *Boston & Maine Railroad,* 274 Mass. 551; *Daniels* v. *Briggs,* 279 Mass. 87. But in a case like this one a right to sue in the corporation and a right to sue in the stockholders are not necessarily mutually exclusive, and it is convenient that all issues arising out of the conduct of the defendants Gove should be adjusted in one suit. See *Dunphy* v. *Traveller Newspaper Association,* 146 Mass. 495, 499.

The by-law is a reasonable regulation of the shareholders' rights to receive dividends. The required surplus of $1,000,000 and the requirement limiting the dividends to net earnings protect the interests of the corporation and of its creditors. The by-law is valid, and where the shareholders' rights are definitely fixed by a valid by-law the discretion of the directors is correspondingly limited, and the reasons that have made courts reluctant to order the declaration of dividends lose their force. *Hazeltine* v. *Belfast & Moosehead Lake Railroad,* 79 Maine, 411. *Spear* v. *Rockland-Rockport Lime Co.* 113 Maine, 285, 288. *Cratty* v. *Peoria Law*

*Library Association*, 219 Ill. 516, 523. *Burk* v. *Ottawa Gas & Electric Co.* 87 Kans. 6, 15–16. *Seattle Trust Co.* v. *Pitner*, 18 Wash. 401. See *Thomas* v. *Laconia Car Co.* 251 Mass. 529, 535. No reason has been advanced why dividends should not be declared and paid regularly in accordance with the by-law. The defendant directors in refusing to declare dividends have not exercised their judgment in good faith.

The requirement that the dividends shall be declared and paid "in ten equal payments each year" on the first day of each month except January and February presupposes the ascertainment before the first day of March in each year of a fixed sum, based upon the then existing financial condition of the corporation, as the "amount of the net earnings" (in excess of the amount required to maintain the surplus at $1,000,000) which is to be divided in equal payments during that year. A sum which varies monthly or even daily cannot be divided into ten equal monthly payments. If during any year it should appear that to continue the payments established at the beginning of the year would reduce the net surplus below $1,000,000 so much of any payment as would have that effect is to be withheld. This is a result of the condition that the equal payments are to be made "so far as consistent with the maintenance of a net surplus of $1,000,000."

6. Relief by injunction against the defendants Gove should be broad enough to prevent recurrence in the future of any of the wrongs found to have been already committed by them and to forestall any other or further wrongs which the proof shows to have been threatened or which the previous conduct of these defendants indicates as likely to be committed. It should not, however, extend beyond the scope of the bill, reasonably construed, and should not prohibit acts which there is no reasonable ground to fear will be done. *Armstrong Cork & Insulation Co.* v. *Walsh*, 276 Mass. 263, 274. *Yankee Network, Inc.* v. *Gibbs*, 295 Mass. 56, 61. *Pickard* v. *Clancy*, 225 Mass. 89, 95.

Applying these principles to the facts found, we think that the defendants Aroline P. Gove and Lydia P. Gove should be enjoined as follows:

(a) From interfering or attempting to interfere with the general supervision and control of the business of the plaintiff corporation by its board of directors or by its president under authority of the vote passed by the board of directors on June 7, 1927, including the hiring and discharge of all employees and such directions as he in his judgment deems proper from time to time to carry out the votes of the board of directors, so long as the vote of June 7, 1927, shall remain in force. But the decree shall reserve to these defendants their power to vote as directors of the corporation in any lawful manner at directors' meetings.

(b) From asserting or attempting to carry into effect any supposed authority of said Aroline P. Gove to act as general manager of the plaintiff in derogation of the managerial powers of the president under the vote of June 7, 1927.

(c) From attempting to direct or control, except by their votes as directors, the advertising policy of the plaintiff, from making contracts for advertising, unless specifically authorized by the directors or the president, from interfering or attempting to interfere with the performance of reasonable contracts for advertising made by the directors or by the president, including those covering more than one month, and from neglecting or refusing to pay from the plaintiff's moneys sums due under such contracts.

(d) From lending money to the plaintiff, or borrowing money in its behalf, or issuing promissory notes in the name or in behalf of the plaintiff, or investing its funds, without the consent of the board of directors.

(e) From doing anything to prevent the attendance of a quorum at any meeting of the directors and from attempting to coerce the action of any other director in the performance of his duties. But the decree shall not require these defendants personally to attend meetings.

(f) From making or contracting or purporting to contract to make any disposition of moneys or other assets of the corporation except as directed by the board of directors or by the president and from refusing or neglecting or delaying to make or threatening not to make such payments and dispositions of money and assets as the board of di-

rectors or the president under the authority of the vote of June 7, 1927, shall direct to be made.

7. The final decree shall provide that the interlocutory injunction now in force restraining the defendants Gove from further prosecuting their suit in Maine shall continue in effect upon the entry of the final decree, but that it shall become dissolved upon the expiration of the time allowed for appeal from the final decree, if no appeal shall have been filed, and if an appeal shall have been filed, it shall be continued in effect, subject to the order of the court, until final termination of this suit.

8. The bill is to be dismissed as to the defendant Renehan with costs to her. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 298 Mass. 53, 62–63. The plaintiff is to have costs, including the costs of the appeals, against the defendants Aroline P. Gove and Lydia P. Gove.

A final decree is to be entered in accordance with this opinion.

*Ordered accordingly.*