LYDIA E. PINKHAM MEDICINE COMPANY *vs.* LYDIA P. GOVE.

Essex.   December 6, 1939. — February 12, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, & COX, JJ.

*Corporation,* Officers and agents, By-laws. *Mandamus. Attorney at Law. Contract,* With attorney at law.

The validity of action by the president of a corporation, in making increases in salaries of employees by virtue of general executive powers given him by a vote of the directors, was not affected by the fact that, when the president's action afterwards was presented to the board, it failed of ratification by a tie vote.

Neither a provision of a by-law of a corporation that "compensation or salaries of all other officers and employees shall be fixed by the board of directors," inserted in a paragraph relating to equality of compensation between two families controlling the corporation, nor a provision of another by-law that the treasurer should receive and dispense the funds on orders of the directors, limited the power of the president to make increases in salaries of employees, not shown to be unreasonable, under general executive power given him by a vote of the board.

Upon a report by a single justice of this court of a petition by a corporation for a writ of mandamus directing its treasurer to make certain payments ordered by the president, where it appeared that the treasurer had no managerial powers, that the orders of the president were valid under power delegated to him by the board of directors and that the single justice "would not refuse the writ on discretionary grounds," this court ordered the writ to issue.

A contract for services and compensation of an attorney at law with a corporation, made under general powers conferred upon the president by the board of directors, while presenting some unusual features, was held not to have been unlawful, and the corporation was entitled to a writ of mandamus directing its treasurer to pay the attorney in accordance with its terms.

PETITION, filed in the Supreme Judicial Court for the county of Essex on April 21, 1939, for a writ of mandamus.

After finding the facts as reported by an auditor, Lummus, J., reserved and reported the case to the full court "for such order as may be proper upon the facts."

*J. W. Worthen,* (*E. B. Cook* with him,) for the petitioner.

*J. S. McCann,* (*L. Withington* with him,) for the respondent.

LUMMUS, J. This petition for a writ of mandamus follows a suit in equity between the same parties, recently ended by the entry of final decree in favor of the petitioner. *Lydia E. Pinkham Medicine Co.* v. *Gove,* 298 Mass. 53; 303 Mass. 1. The stock of the petitioner, a Maine corporation, is held equally by the Pinkham interests and the Gove interests, and the directors are equally divided between them in such a way that the death of a director will not affect the equality. Arthur W. Pinkham, chosen by the Pinkhams, is president, and Lydia P. Gove, chosen by the Goves, who was assistant treasurer when the petition was filed, has become treasurer since the death of her mother on May 21, 1939.

The Pinkhams and the Goves have long been unable to agree upon the policy of the corporation in important particulars. The deadlock was broken only by the fact that the president, Arthur W. Pinkham, was authorized by vote of the directors, on June 7, 1927, "to exercise general supervision and control over the various departments of the Company's business, to hire and discharge all employees therein and to issue such directions as in his judgment are proper from time to time to carry out the votes of the Board of Directors."

We held (298 Mass. 53, 64) that the circumstances required a "liberal construction" of that vote, and that "the intent of the vote was to give the president general charge of the business as a whole, subject of course to the power of the directors to give specific directions from time to time or to modify or recall the grant." It was further held, *ibid.,* 65, that under that vote the president had authority to bring suit in the name of the corporation to

redress wrongs done by the Goves to the corporation. The form of the final decree ordered in the suit in equity appears in 303 Mass. 1, 15–16. Provisions of the final decree restrain the present respondent from attempting to interfere with the general supervision and control of the corporate business by the president under the vote of June 7, 1927, and from refusing, neglecting or delaying disbursements directed by the president under that vote.

We see no reason for holding, though it is contended by the respondent, that the vote of June 7, 1927, is no longer in effect. No substantial change in the situation has taken place since we gave that vote decisive force in the suit in equity.

The present petition is brought in part to require the respondent by mandamus to pay certain employees at an increased rate of compensation established by the president, in most instances on October 19, 1936. These increases were made without the consent of the Goves, and in the belief that the Goves would not approve them. When the increases were presented to the directors for ratification on March 20, 1939, ratification failed upon a tie vote. But we think that that failure did not affect the validity of the act of the president in making the increases. The Pinkhams and the Goves differ honestly and in good faith as to the propriety and wisdom of these increases in pay.

A corporation may obtain a writ of mandamus to require a corporate officer to perform a ministerial duty owed to the corporation. *St. Luke's Church* v. *Slack*, 7 Cush. 226, 238, 239. *American Railway-Frog Co.* v. *Haven*, 101 Mass. 398, 403–408. *J. H. Wentworth Co.* v. *French*, 176 Mass. 442. *Longyear* v. *Hardman*, 219 Mass. 405. *Rayburn* v. *Guntersville Realty Co.* 228 Ala. 662, 93 Am. L. R. 1055, and note. See also *Granara* v. *Italian Catholic Cemetery Association*, 218 Mass. 387.

The first defence is that the provision of the by-laws (Art. VII, Sec. 7) that "The compensation or salaries of all other officers and employees shall be fixed by the board of directors" precluded any increase of pay of employees by the president under the vote of June 7, 1927. That provision appears in a section which begins by providing for

equality of compensation as officers and directors between the Pinkhams and the Goves, and for the division among the members of each group by vote of a majority of the group of the compensation awarded to the group. Then follows the sentence in question, and, following that, appears a provision that the aggregate salaries of the Pinkhams and the Goves shall not be less than $20,000 a year for each group.

We think that the provision relied on by the respondent, inserted in a section devoted to an unusual scheme for salaries to a group to be apportioned among the group, was intended only as an assertion of the reserved power of the directors over salaries in general, and not as a prohibition against the delegation of that power. It was not intended, in our opinion, to require a meeting of the board of directors whenever an additional office boy should be employed, or a mailing clerk should be thought worthy of an increase of a dollar a week. The compensation of employees, subject to control by the board of directors, fell, in our opinion, within the matters lawfully entrusted to the president by the vote of June 7, 1927. The history of the provision in question, traced through amendments to the by-laws, does not, in our opinion, show the contrary. We think that the act of the president in making the increases in question was the act of the corporation as fully as though the increases had been made by vote of the directors.

We are not unmindful of the argument of the respondent that the effect of the vote of June 7, 1927, upon the power of the president to increase salaries of employees was a question of the law of Maine, which in our courts has been said to be a question of fact; that the naked denial of that power contained in the answer was sufficient to raise an issue of fact as to the law of Maine (*Richards* v. *Richards*, 270 Mass. 113, 117, 118); and that failure to traverse the allegation of the answer, denying that power, made the answer conclusive in that respect. G. L. (Ter. Ed.) c. 249, § 5. *Horan* v. *Boston Transit Commission*, 227 Mass. 142, 145. *Casey* v. *Justice of the Superior Court*, 229 Mass. 200, 202. *Hill* v. *Mayor of Boston*, 193 Mass. 569, 575. Without considering

the soundness of the argument in point of legal theory, we think that in substance that allegation in the answer was traversed, though not carefully nor in terms, when the petitioner asserted the validity of the increases.

The rights and duties of the treasurer as such are not affected by the fact that she happens to own or control half the stock of the corporation. The by-laws (Art. VI, Sec. 2) provide that the treasurer shall receive and dispense the funds of the corporation under the direction and order of the directors. That does not mean that the treasurer may ignore the powers of the president under the vote of June 7, 1927, and refuse, unless ordered by the directors, to pay claims lawfully created under that vote. It merely expresses the subordination of the treasurer to the directors and to those acting by their authority. Unless managerial powers are attached to it by vote or by a course of conduct, the office of treasurer is ministerial. A treasurer is bound to disburse the corporate funds under, and only under, the orders of the directors or other officers in charge of the corporate business. *Lydia E. Pinkham Medicine Co.* v. *Gove,* 303 Mass. 1, 9. *Brown* v. *Weymouth,* 36 Maine, 414. *Taylor* v. *Taylor,* 74 Maine, 582, 584, 585. *Minchener* v. *Carroll,* 135 Ala. 409, 414. See also *Hill* v. *Murphy,* 212 Mass. 1, 3; *Lowell* v. *Massachusetts Bonding & Ins. Co.* 304 Mass. 153; *Sears* v. *Kings County Elevated Railway,* 156 Mass. 440. The case is not like *Smith* v. *Commissioner of Public Works of Boston,* 215 Mass. 353, and *McLean* v. *Mayor of Holyoke,* 216 Mass. 62, where the duty of the officer in question was not merely ministerial.

The treasurer is not given a veto power over the acts of other officers. If the contract or other act that gives rise to the claim for payment, though entered into by a duly authorized officer or agent and apparently binding upon the corporation, is nevertheless one that would be set aside upon equitable grounds at the suit of a stockholder (*Dunphy* v. *Traveller Newspaper Association,* 146 Mass. 495; *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398), the treasurer as such cannot as of right resist payment by setting up the equitable rights of the corporation or of the stockholders

against the direction of the duly authorized officers, and is protected against liability to the corporation in making payment. *Hubert* v. *American Surety Co.* 26 N. M. 365, 367. *Ohio Valley Trust Co.* v. *Stewart,* 251 Penn. St. 544, 547. See also *Waldron* v. *Lee,* 5 Pick. 323, 328, 329. It is immaterial that the treasurer happens to be a stockholder entitled to bring a stockholder's suit. The issues open in such a suit cannot be tried as of right in a petition for mandamus against the treasurer.

Whatever may be the scope of the discretionary power of the court to withhold a writ of mandamus where granting it would be inequitable (*McNeil* v. *Mayor & City Council of Peabody,* 297 Mass. 499), a treasurer has no right to convert a proceeding like the present into a complete inquiry into the propriety of the acts of those who control and manage the corporation. In the present case any question of the sort is foreclosed by the finding of the single justice that "So far as the issuance of a writ of mandamus is discretionary, I would not refuse the writ on discretionary grounds." On a report to this court, we neither exercise any discretionary power, nor, commonly at least, review the exercise of that power by a single justice. *Boucher* v. *Salem Rebuilding Commission,* 225 Mass. 18. *Hunter* v. *School Committee of Cambridge,* 244 Mass. 296. *School Committee of Lowell* v. *Mayor of Lowell,* 265 Mass. 353, 354. *Shawmut Mills* v. *Assessors of Fall River,* 271 Mass. 358, 360. *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven,* 294 Mass. 570, 574. *Security Co-operative Bank* v. *Inspector of Buildings of Brockton,* 298 Mass. 5. *Graves* v. *School Committee of Wellesley,* 299 Mass. 80. *Elmer* v. *Commissioner of Insurance,* 304 Mass. 194.

In the present case there is nothing to suggest any invalidity or impropriety in the increases in compensation of employees. The corporation is large in assets, volume of business, and earnings. The employees in question hold positions of importance. The increases cannot be pronounced as matter of law extravagant in amount. As to the increased compensation of employees the petitioner is entitled to the writ.

The remaining question relates to a contract entered into by the president on behalf of the corporation with Mr. Worthen on December 19, 1938., By that contract he was employed as general counsel for the corporation for an indefinite period, terminable by either party, upon a retainer of $1,250 a month. The retainer was to cover certain services, but not services in litigation, nor services for more than two days a month in New York or Washington, nor other services outside the neighborhood of Lynn or Boston. If the retainer of $1,250 should not be paid promptly on the fifth day of any month, then any services rendered during the month in excess of one hundred hours were no longer to be covered by the retainer but were to be paid for at the rate of $12.50 an hour. For services in litigation, the compensation was to be $100 a day for services in court and $12.50 an hour for services out of court, with such increase as the success of the litigation or the amount involved might make fair in the opinion of the president. For services in the litigation pending at the time of the contract in Massachusetts and Maine, a somewhat variant scale of compensation was provided. For other services not covered by the retainer the rate was to be $12.50 an hour. If the retainer, or any bill for services approved by the president or vice-president should not be paid within fifteen days, and action should be brought against the corporation to recover the amount due, the corporation was to pay for services in the prosecution of the action at a specified rate, and in addition the expenses of the action.

The respondent has refused to make any payment under this contract, and the second purpose of this petition is to require the respondent by mandamus to make the payments called for by the contract.

Some of the provisions of this contract are unusual. But we think that the amounts coming due under it fall within the same class as the increases in pay of employees. The retaining of general counsel for a corporation of the magnitude of the petitioner cannot be said to be beyond the ordinary scope of the business of which the president was "to exercise general supervision and control." The com-

pensation agreed upon, including the provisions for increased compensation upon failure to pay promptly, cannot be pronounced improper or extravagant as matter of law. It is found that the president believed the contract to be in the best interests of the corporation. No action against the corporation has been brought upon the contract, and the provision for paying for expenses and services in such an action is not involved in this case.

A writ of mandamus is to issue as prayed for.

*So ordered.*