## MASON P. THOMAS v. JAMES A. BAKER ET AL.

(Filed 19 March, 1947.)

**1. Corporations § 21—**

Where the president of a corporation, with the tacit approval of the directors, assumes general managerial duties, and thereafter the directors in fixing the president's salary take into consideration such additional duties, the authorization for payment for such services authorizes the performance of such services, and constitutes a ratification and approval of the president's managerial functions.

**2. Corporations § 5—**

Where the directors of a corporation are evenly divided in a dispute as to whether its president should exercise managerial powers, and by reason of such division are unable to elect any officers of the corporation or resolve their differences over the management of the corporation, the Superior Court has jurisdiction in the premises under G. S., 55-114, upon petition properly filed.

**3. Corporations § 6a (1)—**

Directors of a corporation may confer managerial powers upon its president. G. S., 55-48; G. S., 55-49.

**4. Corporations § 5—**

In a proceeding under G. S., 55-114, an order continuing corporate officers in their respective offices necessarily carries with it authorization and direction that such officers should continue to exercise the same functions and receive the same emoluments as before the controversy giving rise to the proceeding.

**5. Same—**

In a proceeding under G. S., 55-114, it is not necessary that the corporation, as such, be joined as a party, since its inability to take corporate action is the very situation which the statute seeks to remedy.

**6. Same—**

G. S., 55-114, is remedial in character, and the power given the court thereunder to continue corporate officers in their respective offices necessarily empowers the court to direct that such officers continue with the same authority and emoluments enjoyed by them prior to controversy.

**7. Same—**

G. S., 55-114, empowering the court to continue corporate officers in their respective offices with the same authority and emoluments enjoyed by them prior to controversy, provides an emergency remedy which does not affect the status of the corporation but merely preserves the *status quo* pending determination of controversy in order that the corporation may continue to function, not under the supervision of the court, but by virtue of corporate authority theretofore given, and therefore the remedy violates no constitutional right of stockholders or directors but only

imposes upon them the rules of fair play in the exercise of their property rights.

**8. Constitutional Law § 15½—**

Liberty of action under the Constitution is not license.

**9. Corporations § 5—**

G. S., 55-49, provides that officers of a corporation once in office, shall continue in office until their successors are chosen and qualified.

**10. Judgments § 17a—**

Where a judgment is without error in awarding affirmative relief, a further provision of the judgment dismissing the proceeding will be stricken out or disregarded as an inadvertence.

APPEALS by petitioner and respondents from *Williams, J.,* in chambers at Sanford, 5 September, 1946. From CHATHAM.

Summary proceeding under G. S., 55-114, to continue corporate officers in office pending settlement of dispute over managership of corporation.

The Hadley-Peoples Manufacturing Company is a North Carolina corporation owning and operating a cotton-yarn mill at Siler City, N. C. The following are its officers: Mason P. Thomas, President; Paul W. Baker, Vice-President; J. C. Gregson, Treasurer; Nydia H. Bray, Assistant Treasurer and Secretary.

It is conceded that the president of the company, with the tacit approval of the directors, assumed general management of the mill upon its purchase by the present owners in August, 1944. Then when the directors came to fix the salary of the president on 12 September, 1944, these additional duties were taken into consideration in determining the amount. He was unanimously voted a stipend of $15,000 a year "for serving as President and in all other capacities with the Company." This was a ratification and approval of his managerial functions. For a corporation to authorize its president to be paid for services thereafter to be rendered is to authorize the performance of such services. It thus appears that prior to the annual meeting of the Board of Directors of the corporation, held on 15 January, 1946, the petitioner, Mason P. Thomas, was the duly elected president of the company with general managerial duties; and that his compensation was accordingly fixed to cover his services as president and general manager.

On 10 November, 1945, in a letter addressed to Mason P. Thomas, President of the Company, J. A. Baker, in his capacity as Director, notified him that he and members of his family, owning one-half of the common stock of the Company and represented by one-half in number of the Directors, would be unwilling for him to continue in his "present managerial capacity" after the "next annual meeting of the stockholders in January 1946."

Four days later at a meeting in Charlotte, J. A. Baker suggested, as a means for the settlement of their differences, that the company be offered for sale at public auction. The petitioner countered by asking Baker if he would make him a buy-or-sell offer for their respective shares of stock, and Baker declined to make such an offer. The conference ended without any agreement being reached.

Thereafter, at the annual meeting of the directors on 15 January, 1946, due to the controversy between the petitioner and respondents over "the scope of authority, powers and duties of the President of the Corporation," especially in respect of his managerial activities, the directors, being evenly divided in their sympathies and votes, were unable to elect any officers of the corporation, or to resolve the differences over the management of the mill. Whereupon, this proceeding was started to hold matters *in statu quo* until a new election could be held and to continue the present officers in their respective offices under the effective and operative conditions theretofore obtaining.

The matter was heard before the resident judge of the Fourth Judicial District, Honorable Clawson L. Williams, and on 5 September, 1946, an order was entered continuing the present officers in their respective offices, but for "want of authority" the judge declined "to adjudicate the specific authority and powers of the President of the Corporation," and dismissed the proceeding at the cost of the petitioner.

Both sides appeal, assigning errors.

*Brooks, McLendon, Brim & Holderness for petitioner.*
*Tillett & Campbell for respondents.*

STACY, C. J., after stating the case as above: The controversy over the management of the mill produced a situation which gives the court jurisdiction in the premises. G. S., 55-114. The dispute centers around the designation of a manager or the vesting of general managerial powers in the president of the corporation. Obviously, a manufacturing plant in operation needs some direction and management. The court was therefore under the necessity of dealing with the real question in difference between the parties.

The directors of a corporation may confer general managerial duties upon its president, G. S., 55-48; 55-49, as was done by the directors of the instant corporation prior to the stalemate of 15 January, 1946; and the order continuing the present officers in their respective offices until their successors are duly elected, as sanctioned by the statute, necessarily carries with it authorization and direction that they should continue to exercise the same functions and receive the same emoluments which pertained to their respective offices immediately prior to the controversy which resulted in the stalemate. Officers of a corporation, legally in

office, are expected to carry on the business of the corporation. That is what they are there for.

The court's refusal "to adjudicate the specific authority and powers of the President of the Corporation," if at variance with the effect of the order continuing the present officers in their respective offices, may be considered a misapprehension of the court's authority in the premises. The order of continuance merely keeps in force the will of the corporation as unanimously expressed by the directors on 12 September, 1944, and does not change or "affect the status of the corporation" within the meaning of the statute. It simply preserves the *status quo* for the time being. It is the intent of the statute that the corporation shall continue to function pending settlement of the dispute, not under the supervision of the court, but by virtue of corporate authority theretofore bestowed. Hence, this summary proceeding to avoid temporary corporate paralysis. *In re Hotel Raleigh,* 207 N. C., 521, 177 S. E., 648. It is after the similitude of an application for injunctive protection *pendente lite.* The pillars of the business are not to be pulled down while the dispute is raging. The end in view is to enable the officers of the corporation to move from dead center by reverting to the operative conditions theretofore lawfully established and subsisting. The statute was enacted for some purpose; it is remedial in character, and if it mean less than this, it would be useless. Why provide for the matter to be brought before the judge at all, if he can do nothing about it? What the parties want, and need, is to be extricated from their present tug of war.

While intended primarily for the benefit of the corporation, as appears from the text and context of the statute, the corporate entity, as such, is not a party to the proceeding. Nor is it essential that it should be. It could not have joined in the proceeding, when instituted, because of the deadlock over its management, and so the judge of the district is empowered to take cognizance of the situation. This violates no constitutional right. It simply provides for emergency assistance in time of need, and the litigants here are in no position to complain. They are permitted to do as they please with their own, provided they observe the rules of fair play. Liberty of action under the Constitution is not license. *Sic utere tuo,* etc., is still good law and good morals. Having once established satisfactory arrangements for carrying on the business of the corporation, it is but meet that less than a majority should not be permitted to grind the corporate wheels to a permanent stop. Such is the purview of the statute.

True it is, there exists no authority for the court, in this proceeding, to take charge of the business of the corporation, as this would be to "affect its status," but the court is authorized to continue the officers in their respective offices until an election can be held to determine their successors. Moreover, in G. S., 55-49, it is provided that officers of a

corporation, once in office, "shall hold office until others are chosen and qualified in their stead."

It would appear that the provision continuing the present officers in their respective offices, and the dismissal of the proceeding are somewhat inharmonious or wanting in consistency. There was no error in the former, and the latter will be stricken out or disregarded as an inadvertence. Indeed, it may be doubted whether the learned judge intended to do more than dismiss the proceeding from further consideration by him, leaving the operative provisions of his order in effect.

The matter will be remanded for judgment accordant herewith and for such further action as to justice appertains and the exigencies of the situation may require.

The petitioner will be awarded his costs.

Error and remanded.