233 P.2d 1051

**MARRON et al. v. WOOD et al.**

No. 5231.

Supreme Court of New Mexico.

July 23, 1951.

the defendants in error as plaintiffs in which a declaration of their rights as stockholders and directors of the corporation was asked as against the defendants Wood who were officers and directors of the corporation and as against the corporation itself.

The controversy culminating in the judgment sought to be reviewed derives from commercial dealings of the late Owen N. Marron and the late Francis E. Wood, pioneer lawyers of New Mexico, who formed a partnership for the general practice of law in 1908 which continued under the firm name of Marron and Wood, with offices at Albuquerque, until the death of the senior member of the firm, O. N. Marron, in 1945. To relate in any detail the story of this association over the long period it endured would take us from late territorial days through two world wars and down to, if not quite through, mid twentieth century days. Suffice it to say that the personal relations of the partners were unusually pleasant, each having complete confidence in the other and each maintaining for the other an affectionate regard.

The junior member of the law firm, Francis E. Wood, an original party defendant below, is the father of Francis O. Wood, a co-defendant. Both were named defendants as stockholders and directors of the laundry corporation, itself a party

Louis C. Lujan, Albuquerque, for plaintiffs in error.

Simms, Modrall, Seymour & Simms and Alfred H. McRae, all of Albuquerque, for defendants in error.

SADLER, Justice.

The plaintiffs in error, Francis E. Wood, Francis O. Wood and Excelsior Laundry Company, a corporation, seek a review on writ of error of a judgment rendered against them as defendants below in a declaratory judgment action instituted by

defendant. A few days after the cause was docketed on writ of error in this court, Francis E. Wood died and by stipulation of the parties his personal representatives, Francis O. Wood, Joseph E. M. Wood and Albuquerque National Bank, a national banking corporation, as Executors of his Last Will and Testament, have been substituted in his place and stead as plaintiffs in error in this court. The defendants in error, as plaintiffs, who sued for a declaratory judgment below, as above stated, all are children of Mr. and Mrs. O. N. Marron, except Floyd W. Lee who is the husband of one of the daughters, and all received their stock under the will either of O. N. Marron, or of Frances Halloran Marron, his wife. They are Owen B. Marron, Floyd W. Lee, Frances Marron Lee, as Executrix of the Last Will and Testament of O. N. Marron, deceased, as well as individually; Ralph Marron, Eleanor Marron Lopez, Harriet Marron Dryer, as stockholders of Excelsior Laundry Company, a Corporation, and Owen B. Marron and Floyd W. Lee, as directors thereof.

In the early twenties O. N. Marron and Francis E. Wood acquired all the stock of Excelsior Laundry Company of Albuquerque, where it did business and had its principal office. It was a New Mexico corporation and at the time of trial it was a substantial and prosperous going concern with 500 shares of stock issued and outstanding, 250 shares of which were owned by Francis

E. Wood and Francis O. Wood, his son. The other 250 shares were owned by Floyd W. Lee, Owen B. Marron, Frances Marron Lee, Ralph Marron, Eleanor Marron Lopez and Harriet Marron Dryer, all of whom succeeded to their stock under the last will and testament of either O. N. Marron, or of Frances Halloran Marron, his wife, as above stated.

From the outset the affairs of the Laundry Company, whether operating under the corporate charter or through a partnership arrangement between the parties, as sometimes proved to be the case, were treated as an enterprize of concern solely to the Marron and Wood families, or in the nature of a closed corporation, as the case might be. In line with this policy, under an arrangement between Mr. and Mrs. Marron, on the one hand, and Mr. Francis E. Wood on the other, the corporate by-laws were so amended as to call for four directors, two to be selected by the Marron stock and two by the Wood stock. Pursuant to this by-law, as amended, Francis E. Wood and Francis O. Wood, his son, were elected directors, as representatives of the Wood stock, as were Owen B. Marron and Floyd W. Lee, as representatives of the Marron stock. The officers of the company at the time of trial were Francis E. Wood, President and Treasurer; Francis O. Wood, First Vice-president, and Owen B. Marron, Secretary. In addition, Francis E. Wood had been appointed General Business Man-

ager under the same agreement. As just said, the business of the corporation was sometimes conducted under the corporate charter. At other times, it was operated under a partnership arrangement, agreed to by the parties, under which the partners leased the laundry and equipment from the corporation, thereby making the profits from the operation taxable only to the partners, individually, and avoiding the excess profits tax as well as other taxes incident to corporate management.

During a period of corporate management and in the year 1934, a resolution was adopted providing for the payment of a salary of $100.00 per week to Owen N. Marron, who was then President, and $100.00 per week to Francis E. Wood, who was then Secretary. Subsequently, when the partnership form of management was adopted, the parties changed the arrangement so as to pay $500.00 per month to Owen N. Marron and $500.00 per month to Francis E. Wood. This arrangement was subsequently altered during partnership management so as to provide that one-half of the $500.00 monthly payment to Messrs. Marron and Wood, or $250.00 to each, should be charged on the books as salary and the other half, or $250.00 to each, should be charged as withdrawals against profits. The occasion for the change arose from the fact that S. Y. Jackson, a long time employee who had served for some years as General Manager, and B.

Beets, an employee who was serving as Sales Manager, had been taken into the partnership and it was thought this manner of charging the withdrawals by Owen Marron and Francis E. Wood would be more just to the new partners in bringing about a more equitable division of the profits from the operation of the firm. After Owen N. Marron died the parties, by written agreement, substituted his Executrix, Frances Marron Lee, and his heirs, as partners in the firm to take his place, whereupon as a group they took the same amount drawn by Francis E. Wood

As already stated, this shift from corporate to partnership management was prompted by a desire to make a saving in federal taxes incident to corporate management. However, by the spring of 1946 such modification of the pertinent tax laws had taken place that it was deemed advisable to revert back to corporate management, which was done. Henceforth, no salaries were paid either to the Marron or the Wood interests, nor were any demanded by either group until disagreement arose between them precipitating a deadlock between the two Marron directors and the two Wood directors. So matters stood until the latter part of the year 1947 when Francis E. Wood demanded payment to him of a salary of $100.00 per week for the year 1947. The demand was refused by the votes of Owen B. Marron and Floyd W. Lee, the son and son-in-law, respectively, of the late Owen Marron, who

as directors voted against salaries for anybody.

As a result of this deadlock in February, 1948, prior to closing the corporation's accounts for 1947, Francis E. Wood, as President and General Business Manager, called upon and required the bookkeeper to issue him a check for $5200.00 as salary for 1947. Under similar circumstances and over the objection and protest of the Marron directors he caused the issuance to himself of a check for $5200.00 as salary for the year 1948, during the pendency of the present suit. Both of these checks were subsequently cashed by him following notice to the Marron directors that he held the checks and intended to cash them in satisfaction of his claim to salary for the two years mentioned.

From the foregoing it is easily seen that a deadlock existed among the stockholders as well as the directors, due to the fact that they were evenly divided both as to personnel of the directors and as to shares of stock owned by the respective interests. It was but natural that intense personal feelings of hostility and bitterness should develop between the respective directors and stockholders and that mutual distrust of the motives and purposes of each side should exist on the part of the other. Unfortunately, such proved to be the case.

The division or deadlock was not confined, however, to the matter of withdrawals by either side as salary or profits as appears from a specific finding of the trial court on the subject. It reads: "7. The Board of Directors is deadlocked also on the question of whether Francis E. Wood, as President and General Business Manager, has the right to direct the two Marron directors not to communicate with S. Y. Jackson, the actual manager of the Corporation's business, touching its affairs; and whether he has a right, over the objection of the Marron directors, to cause building changes in the plant structure and the erection of offices with apartments therein, in conformity with his own opinion; and whether he has the legal right to borrow money for the Corporation to purchase machinery and plant equipment without the consent of a majority of the Board of Directors; and whether he has the right to give instructions to S. Y. Jackson, the actual manager of the laundry plant and business, touching the method of conducting the same, and details of operation, in the absence of approval of a majority of the board of directors; and whether he has a right to refuse a request of the Marron directors to fix a definite and regular meeting time for the Board of Directors; and whether he has a right over the objection of the Marron directors, to occupy office quarters in the plant of the Defendant Corporation."

It appeared to the trial court as specifically found that the plaintiffs, by reason of the matters mentioned, were justified in bring-

ing the suit in question for the protection of the interests of the corporation and were entitled to have assessed as against it, a reasonable fee for their counsel. Likewise the trial court felt, as it also found, that Francis E. Wood as President and General Business Manager, acted properly in employing counsel to represent the corporation in this action.

From the foregoing facts, which are within the findings of the trial court, it drew the following conclusions of law, some of which due to subsequent events and accord of the parties are no longer important to discuss, to wit:

"1. That the Court has jurisdiction of the parties and the subject matter of the action.

"2. The questions presented by the pleadings are properly the subject of declaratory relief.

"3. Francis E. Wood, as President and General Business Manager of the Corporation, had no legal right to charge and draw a salary of $100.00 a week * * * for the year 1947, or for the year 1948, and has received $10,400.00 of corporate funds which he should restore to the Corporation.

"4. Francis E. Wood, as President and General Business Manager of the Corporation, has no legal right to prohibit Directors Marron and Lee from conferring with S. Y. Jackson, or any other employee of the Corporation, touching its affairs.

"5. Francis E. Wood, as President and General Business Manager of the Corporation, had no legal right to cause changes in the plant structure and the erection of offices with apartments therein, over the objection of Directors Marron and Lee.

"6. Francis E. Wood, as President and General Business Manager of the Corporation, has no legal right to borrow money in the name of the Corporation, or purchase machinery or plant equipment for the same, without the approval of a majority of the Board of Directors of the Corporation.

"7. Francis E. Wood, as President of the Corporation, has the right to give orders and directions to the general manager, S. Y. Jackson, touching the method of conducting the routine business of the Corporation, but his acts are subject to review by the Board of Directors and a majority thereof may revoke or amend his orders.

"8. It is the duty of Francis E. Wood, as President of the Corporation, to fix a definite and regular meeting time for the Board of Directors to hold their meetings, so as to transact the business and affairs of the Corporation.

"9. Francis E. Wood, as President and General Business Manager, has no right to occupy nor to permit his son, Francis O. Wood, to occupy offices in the plant, over the objection of Directors Marron and Lee, and without approval of a majority of the Board.

"10. That in view of the divergence of opinions between the stockholders and directors of the Corporation, the plaintiffs were justified in instituting and the defendants acted properly in defending this action through their respective counsel and that attorney fees therefor are payable by the Corporation in the amount of $2500.00 for plaintiffs' attorney and $2500.00 for defendants' attorney.

"11. The Plaintiffs are entitled to a declaratory judgment, as prayed for in their complaint and in accordance with the conclusions herein made."

Having so found and concluded, the trial court rendered judgment in conformity with its findings and conclusions, for the revision and correction of which the plaintiffs in error, defendants below, have prosecuted this writ of error. The matters which now remain for determination here may be briefly summarized, as follows:

1. The right of Francis E. Wood to draw a salary as President and General Business Manager after the corporation took over operations from a partnership on April 1, 1946.

2. The rights of the directors representing the Marron interests in the management of the company.

3. The allowance of attorneys' fees to the defendants.

It will contribute to a clearer understanding of the trial court's disposition of the issues tried if we quote from the prayer of the complaint the questions on which they sought a declaratory judgment, to be followed by quoting that portion of the final decree answering seriatim the questions propounded. The prayer of the complaint reads:

"Wherefore, Plaintiffs pray for a declaratory judgment as against the defendant corporation and Francis E. Wood and Francis O. Wood, as directors and officers thereof, as touching the following matters and things:

"A. Was Francis E. Wood entitled to receive $100.00 a week for the fifty-two weeks of the year 1947, so drawn by him, as hereinabove alleged?

"B. Has Francis E. Wood, as President and General Manager of the corporation, the legal right to prohibit these Plaintiffs, as directors, from conferring with S. Y. Jackson, and any other employee of the corporation's business, touching its affairs?

"C. Has Francis E. Wood, as President and General Manager, the legal right, over the objection of these Plaintiffs and without the affirmative vote of a majority of the Board of Directors of said corporation, to cause building changes in the plant structure and the erection of offices and apartments therein, according to his own personal desires?

"D. Has Francis E. Wood, as President and General Business Manager of the corporation, over the objection of these Plaintiffs, the legal right to borrow money in the name of the corporation or purchase machinery or plant equipment for the same, without the approval of a majority of the Board of Directors of said corporation?

"E. Has Francis E. Wood, as President and General Business Manager of the corporation, over the objection of these Plaintiffs and without the approval of a majority of the Board of Directors of said corporation, the legal right to give orders and directions to S. Y. Jackson, the General Manager of the laundry plant and business, touching the method of conducting the same and the details of its operation?

"F. Has Francis E. Wood the right, as President of the corporation, to refuse the request of these Plaintiffs to fix a definite and regular meeting time for the Board of Directors to hold their meetings and transact the business affairs of the corporation?

"G. Has Francis E. Wood or Francis O. Wood right and authority, without the consent and direction of a majority of the Board of Directors, to occupy office quarters in the plant of the defendant corporation?"

After asserting in paragraph one (1) of the decree its jurisdiction of the parties and of the subject matter of the action and decreeing that the questions presented by the pleadings were the proper subject of declaratory relief, the court proceeded to make its declaration of the rights of the parties to each question presented, as quoted next above, by separate paragraphs of its decree, as follows:

"1. That the Court has jurisdiction of the parties and the subject matter of this action, and the questions presented by the pleadings are properly the subject of declaratory relief.

"2. The Court answers paragraph A, of the Plaintiffs' prayer, in the negative, and holds that Francis E. Wood, as President and General Business Manager of the Defendant, Excelsior Laundry Company, a corporation, had no legal right to charge and draw a salary of $100 a week for thirty-nine weeks in 1946, or for the year 1947, or for the year 1948, and has received $10,-400.00 of corporate funds which he should restore to the corporation.

"3. The Court answers paragraph B, of the prayer of the Plaintiffs' complaint, in the negative, and holds that Francis E. Wood, as President and General Business Manager of the corporation, had no legal right to prohibit Directors Marron and Lee from conferring with S. Y. Jackson, or any other employee of the corporation, touching its affairs.

"4. The Court answers paragraph C, of the Plaintiffs' complaint, in the negative, and holds that Francis E. Wood, as President and General Business Manager of the

corporation, has no legal right to cause changes in the plant structure and the erection of offices with apartments therein, over the objection of Directors Marron and Lee.

"5. The Court answers paragraph D, of the prayer of the Plaintiffs' Complaint, in the negative, and holds that Francis E. Wood, as President and General Business Manager of the corporation, had no legal right to borrow money in the name of the corporation, or purchase machinery or plant equipment for the same, without the approval of the Board of Directors of the corporation.

"6. The Court answers paragraph E, of the prayer of the Plaintiffs' complaint, as follows: Francis E. Wood, as President of the corporation, has the right to give orders and directions to the General Manager, S. Y. Jackson, touching the method of conducting the routine business of the corporation, but his acts are subject to review by the Board of Directors and a majority thereof may revoke or amend his orders.

"7. The Court answers paragraph F, of the prayer of the Plaintiffs' complaint, in the negative, and holds that it is the duty of Francis E. Wood, as President of the corporation, to fix a definite and regular meeting time for the Board of Directors to hold their meetings, so as to transact the business and affairs of the corporation.

"8. The Court answers paragraph G, of the prayer of the Plaintiffs' complaint, in the negative, and holds that Francis E. Wood, as President and General Manager of the corporation, has no right to occupy, nor to permit his son, Francis O. Wood, to occupy, offices in the plant, over the objection of Directors Marron and Lee, and without the approval of a majority of the Board of Directors."

We shall first treat in reverse order the first two questions presented by the plaintiffs in error which still remain for determination, as stated above, the second of which relates to the rights of the directors representing the Marron interests in the management of the company. The trial court correctly ruled that the late Francis E. Wood, as President and General Manager, unduly restricted and hampered Owen B. Marron and Floyd W. Lee in the performance of the duties and powers of their office as directors of the corporation. Nor have plaintiffs in error presented valid grounds of objection to the trial court's declaration that the said Francis E. Wood, as President and General Manager of the Corporation was without legal right to prohibit Directors Owen B. Marron and Lee from conferring with S. Y. Jackson, or any other employee, touching affairs of the corporation. It would be an arbitrary rule that would deny a director the right to discuss company affairs with its manager or employees.

■ In so concluding, we may add that we find nothing in the trial court's declarations to indicate any intent on its part to take away from the President and General Manager of the corporation powers or privileges rightfully appertaining to his office, whether entrusted to him in by-laws of the corporation, by directives of its governing board, or otherwise existing. Such powers and privileges continue in him until changed by law or by a majority vote of the board of directors or stockholders, as may be required. Lydia E. Pinkham Medicine Co. v. Gove, 298 Mass. 53, 9 N.E.2d 573, and 305 Mass. 213, 25 N.E.2d 332. As said in the deadlock case of Thomas v. Baker, 227 N.C. 226, 41 S.E.2d 842, 844: "Officers of a corporation, legally in office, are expected to carry on the business of the corporation. * * * The pillars of the business are not to be pulled down while the dispute is raging."

■ In line with the thoughts just expressed, we are of opinion that the President and General Manager, whoever he may be, has the right, authority and privilege of directing the ordinary, every-day business affairs of the corporation, unless and until the Board of Directors directs otherwise. In Burguete v. G. W. Bond & Bro. Mercantile Co., 43 N.M. 97, 87 P.2d 749, we find a good statement of the powers of a business manager which we quoted with approval from Restatement of the Law of Agency at pages 173–176, § 73 and Comments (a) and (b) thereunder.

Paragraphs Nos. C and G in the prayer for declaratory judgment present the next ground of error, viz., the claim to office quarters in the plant for President Wood. They read:

"C. Has Francis E. Wood, as President and General Business Manager, the legal right, over the objection of these Plaintiffs and without the affirmative vote of a majority of the Board of Directors of said corporation, to cause Building changes in the plant structure and the erection of offices and apartments therein, according to his own personal desires?"

"G. Has Francis E. Wood or Francis O. Wood right and authority, without the consent and direction of a majority of the Board of Directors, to occupy office quarters in the plant of the defendant Corporation?"

■ The trial court's action on this issue must be determined in the light of the fact that the claim of Francis E. Wood for occupancy of an office in the plant was bound up with the request for other changes in plant structure, which taken together approximated an expenditure of several thousand dollars; also, that the acting and operating Manager on the ground of the business for many years, S. Y. Jackson, a technical and experienced laundry man, agreed by all as being more responsible for

success of the business than any other single individual, had quarters in the plant. The existing deadlock on the Board of Directors made it impossible to secure favorable action for authority to effect the changes necessary to supply the office quarters sought. We cannot put the trial court in error in answering paragraph G of the prayer of the complaint as it did if, indeed, the lapse of time and the intervening death of Francis E. Wood have not rendered the question moot. The court answered paragraph G, as follows: "(8) The Court answers paragraph G, of the prayer of the Plaintiffs' Complaint, in the negative, and holds that Francis E. Wood, as President and General Business Manager of the corporation, has no right to occupy, nor to permit his son, Francis O. Wood, to occupy, offices in the plant, over the objection of Directors Marron and Lee, and without the approval of a majority of the Board of Directors."

We come next to what is the most controversial and bitterly contested question in the case, listed in the early part of this opinion as question No. 1 remaining for decision, namely, the salary claim of Francis E. Wood for services as President and General Manager for the years 1947 and 1948, after the resumption of corporate character and operation on April 1, 1946. It is to be recalled that following the change from partnership back to corporate management in the spring of 1946, no payments as salary were made to either the Marron or Wood representatives serving as officers and directors. Two of the Marron directors, Owen B. Marron and Floyd W. Lee having voted against the request of Francis E. Wood to be paid a salary of $100.00 per week, as well as against salaries for anybody, he subsequently had two separate checks issued to himself in the sum of $5200.00, each, and cashed them. The plaintiffs below, defendants in error, here seek a declaration of the right of Francis E. Wood to the payments so had and received by him from the corporate funds.

As already shown, the trial court answered paragraph 2 of the prayer of the complaint by declaring that Francis E. Wood, as President and General Manager was without legal right to charge and draw a salary of $100.00 per week for the years 1947 and 1948, and that $10,400.00 received by him on the two checks for $5200.00, each, which he had caused to be issued to himself and paid from corporate funds, should be restored to the corporation. The propriety of this declaration is the question we must decide. Its correctness revolves around the trial court's action in refusing two specially requested findings of the defendants below who question such refusals here as plaintiffs in error. The specially requested findings so refused are Nos. XVIII and XXIX, reading as follows:

"By resolution in the year 1934, the corporate minutes provided that beginning as

of January 1, 1934, an executive salary of $100.00 per week should be paid to each the President, Owen N. Marron, and the Secretary-Treasurer, Francis E. Wood, on account of services to the corporation, and that said resolution has never been revoked or amended.

"That it was the understanding between Francis E. Wood, Owen N. Marron and Frances Halloran Marron that a salary should be paid to the Marrons and an equal salary to Francis E. Wood so long as they all lived and to the survivor of them and it was the intention of the parties by the 1934 resolution to provide for the same in the corporation."

In order to. pass upon the correctness of the trial court's action in refusing the two specially requested findings just quoted, we must view the same against the background of custom and practice as to salary and withdrawals indulged by the principal actors from the very beginning in conducting the affairs of the Laundry Company. Since both requested findings deal with the question of salary, the discussion of them will be more or less interwoven, what is said as to one in some instances having a direct bearing on the trial court's action as to the other. And both must be seen in the light of the claim of one of the principal actors, Francis E. Wood, that he and the senior Marrons, husband and wife, were engaged in a joint venture, *attended by the*

*incident of survivorship as to salaries,* of which more presently.

This claim or theory of Francis E. Wood was embodied in defendant's requested finding No. XIX reciting an understanding on the part of Wood on the one hand and Owen N. Marron and Frances Halloran. Marron, on the other, that he as a representative of the Wood stock and the two Marrons as joint representatives of their stock should draw an equal salary so long as all of them lived, "and to the survivor of them"; and that it was intended by "all" parties that the 1934 corporate resolution should apply this understanding to the corporation. It will be noted that the corporate resolution relied upon says nothing about "survivorship." The trial court unquestionably was not satisfied that the understanding recited, if made, ever carried. the provision for survivorship and, therefore, refused the finding.

There was evidence in the record, much of it coming from the lips of Wood, himself, while testifying as a witness in his own behalf, from which the trial court might very well have found an agreement between Wood on the one hand and the Marrons on the other for an equal division of profits and salary as between the separate families. The so-called "salary" withdrawals, from the very beginning, were in truth and in fact very largely a division of profits as the record abundantly reflects.

It would unduly lengthen this opinion and serve no good purpose to set out in detail testimony and evidence supporting the statements just made. Suffice it to say that it discloses a practice of equal withdrawals by the separate interests in amounts as large as earnings would permit; that the so-called salary resolution of July 1, 1934, calling for salary of $100.00 per week as "salary" to Owen N. Marron as President and Francis E. Wood, as Secretary-Treasurer, was adopted by the corporate directors in the light of this practice and in execution of the mutual understanding for an equal division of profits; that when the depression years came on and business would no longer justify it, the payments were reduced and for approximately a ten-year period under partnership management the so-called resolution was abandoned and in disuse, as the measure of withdrawals viewed either as salary or profits. After resort again to corporate management it was not revived until Francis E. Wood made his salary demand and sought to employ it, to his own advantage, under a claim of survivorship, without allowing the Marrons to avail of it as to the office named in the resolution and held by one of them. The trial court held, and properly so we think, that the burden resting on defendants as to the issue of survivorship was not sustained. In this conclusion, we agree.

It is to be remembered that this claim, as made, if sustained would have entitled Francis E. Wood to a $5200.00 annual salary for life, before any division of profits would take place. When he made the claim, the Marron heirs objected unless, according to practice and custom, a like amount was set over to one of them, serving as Secretary, for the Marron stockholders' use and benefit. Their claim was rejected by the Wood directors. The trial court was entitled to test existence of an agreement as to survivorship by the probabilities. According to the claim as made, if Francis E. Wood died first, the Marron interests would have been entitled to draw $5200.00, annually, so long as either Owen N. Marron or Frances Halloran Marron should live, to the exclusion of a like withdrawal by the Wood interests. As we shall later show, this would not be a fair construction of the 1934 resolution, if the element of survivorship actually existed. Aside from all testimony and evidence bearing on the question, the trial judge may very well have felt it unlikely that men of the professional skill and experience of these two law partners with their many busines contacts in a wide and varied practice would ever have entered into an arrangement that could prove so devastatingly ruinous to either by the passage of time.

Apparently, the trial court took the view that the July 1, 1934, resolution was not

personal to the two individuals named in it but applied as well to the office and declined to give it unilateral operation and effect. In other words, if new life was to be injected into the dormant resolution after a decade of disuse, all parts of it should come to life, not alone that portion which related to the office of President, which would benefit Francis E. Wood only. Such a view of the resolution is entirely plausible and, certainly, lends abundant support to the trial court's action, if the July, 1934, corporate resolution was not to be deemed abandoned by mutual consent through disuse, a view which the trial court with good reason could have taken.

Thus it is that the trial court is not to be put in error for refusing either defendants' specially requested finding of fact No. XVIII or No. XIX. The evidence failed to satisfy the trial judge and thereby sustain defendants' burden of proof on an agreement of survivorship as to salaries. Of this, there can be not the slightest doubt. Actually, the court found as a fact in paragraph 4 of its decision, as recited in substance above, that the July 1, 1934, corporate resolution providing for $100.00 per week salary to Owen N. Marron as President and a like amount to Francis E. Wood as Secretary *was adopted* by the corporation's official board. What defendants objected to is not the court's failure to find that the resolution was passed, but its refusal to give it unilateral

application in favor of Francis E. Wood by reason of an agreement of survivorship which the court refused to find was ever made. The trial court did not err in its action in either respect claimed.

The trial court must have felt the discord and bitterness which marred operations of the Laundry Company's affairs following death of Mr. and Mrs. O. N. Marron was in part attributable to each of the two principals still active in the company. This perhaps explains the trial court's action in declaring that the corporation should pay the attorneys' fees for each side in the sum of $2500.00, each. The plaintiffs below have sued out a cross writ of error complaining of the allowance of these fees in favor of defendants, arguing they are responsible for the deadlock and ought to bear this expense themselves. We are not disposed to set aside this exercise of discretion by the trial judge. We see nothing arbitrary in his declaration as to these fees.

Now as to disposition of the case in view of our conclusions. If the corporate resolution still stands in full force and effect, and has not become dormant through abandonment of use, a conclusion the trial court might very well have reached, then it would not have been improper to adjudge a payment of $10,400.00 should be made from corporate funds to the Secretary Owen B. Marron to cover salary as

Secretary for 1947 and 1948, to equalize the amounts received by Francis E. Wood, as President. This would be in strict accord with the resolution relied on by defendants below. But to have done this at time of trial might have complicated corporate affairs and finances. The trial judge, no doubt feeling that things that are equal to the same thing are equal to each other, chose the more practical disposition by holding defendants strictly to their theory of the case and since under it the principal actor, Francis E. Wood, was not entitled to the two years' salary in the right and manner claimed, declared it should be restored to the corporation. We see no error in this declaration.

Finding no error, the judgment of the trial court will be affirmed.

It is so ordered.

FRED J. FEDERICI and A. W. MARSHALL, District Judges, concur.

McGHEE and COMPTON, JJ., dissenting.

McGHEE, Justice (dissenting in part).

The holding of the majority that the active President and General Business Manager of a corporation doing an annual business of $600,000.00 was not entitled to occupy an office in the plant is at least novel, when there is nothing in the corporate records denying him such right.

I also disagree with the holding of the majority that Francis E. Wood was not entitled to the salary for services rendered as fixed by duly adopted corporate resolution in 1934 which had never been rescinded or amended. This suit did not involve the right of Owen B. Marron to draw a salary as Secretary but only the claim of Francis E. Wood that he had the legal right to a salary of $100.00 per week. When the corporation took over the operation of the laundry from the partnership it is my view the duly adopted articles of incorporation, resolutions and by-laws became operative and were in full effect until modified or repealed. See Pinkham cases cited in majority opinion. Wood was entitled to the salary theretofore set by the 1934 resolution. Farmers Loan & Trust Co. v. Houstonic R. Co., 152 N.Y. 251, 46 N.E. 504; Funsten v. Funsten Commission Co., 67 Mo.App. 559, and Ehaney v. Chesebro, 192 Wis. 532, 213 N.W. 315.

COMPTON, J., concurs.