Kenton-Walker, Janet, J.
INTRODUCTION
Before the court are motions for summary judgment and crossmotions for summary judgment in two companion cases, both arising from an intra-familial dispute between two 50% shareholders who are also the corporations’ two directors. In the first action, 2013-0063 (the removal action), Arklow, Inc. (the Corporation) and Arklow Limited Partnership (the LP) seek injunctive relief against Daniel Weadock (Daniel) to remove Daniel from his position at the International, a golf club and course owned by the LP. In the second action, 2013-0306 (the dissolution action), Florence Weadock (Mrs. Weadock) seeks a judicial order dissolving the Corporation pursuant to G.L.c. 156D, §14.30. For the reasons that follow, the Corporation and the LP’s Omnibus Motion for Summary Judgment is DENIED in the removal action; Daniel and Mrs. Weadock’s Motions for Summary Judgment are ALLOWED in the removal action; Mrs. Weadock’s Motion for Summary Judgment is DENIED in the dissolution action; and the *545 Corporation’s and the LP’s Omnibus Motion for Summary Judgment is DENIED in the dissolution action.
BACKGROUND
Facts Pertaining to Removal Action
The LP owns the International Golf Club (the International) in Bolton, Massachusetts. Mrs. Weadock holds a 53.4% interest in the LP. Her children, Daniel, Bryan Weadock (Biyan), Kevin Weadock, and Ann Specht, each own a 8.9% interest in the LP. Brian Lynch, the former general manager and Weadock family outsider, owns a 10% limited partnership interest. The Corporation owns the remaining 1% interest in the LP.
The business of the LP is governed by a Limited Partnership Agreement. The Limited Partnership Agreement names the Corporation as the General Partner of the LP. As general partner of the LP, the Corporation is responsible for managing the operations and affairs of the LP. Mrs. Weadock is a 50% shareholder of the Corporation and her son Bryan is the other 50% shareholder. Mrs. Weadock and Bryan are the two directors of the Corporation. Bryan is the President and Treasurer of the Corporation and Mrs. Weadock is the Secretary. Mrs. Weadock and Bryan have maintained their respective positions within the Corporation since 2005.
In a November 21, 2005 meeting of the directors, Mrs. Weadock and Bryan elected Daniel as Vice President of the Corporation. At this time, Mrs. Weadock and Bryan put Daniel in charge of managing the day to day operations of the International. Daniel has managed the International since this time.
Displeased with his brother’s management of the International, on January 10, 2013, Bryan had the Bolton Chief of Police and a Constable deliver a termination letter to Daniel and another employee, Mark Drago. The letter states in pertinent part:
Dear Dan:
As President of Arklow, Inc., the General Partner of Arklow Limited Partnership, I hereby notify you that your employment and all related duties and responsibilities are terminated, effective upon your receipt of this letter . . .
You are instructed to immediately leave your office and the buildings and grounds of The International Golf Course and to turn over all keys and credit cards relating to The Club, as well as the Club’s computer. You are not to return to or enter upon the property at any time without my written permission.
Daniel refused to leave the premises or his position. The following day, Bryan filed the removal action on behalf of the Corporation and the LP seeking injunctive relief to remove Daniel. It is undisputed that prior to Biyan taking action, the directors did not vote on whether Daniel should be removed. Evidence in the record suggests that early on, Mrs. Weadock approved the termination of Daniel, but then changed her position prior to Bryan’s issuance of the termination letter to Daniel. Bryan Weadock Aff. In the removal action, the parties dispute whether Bryan had authority to remove Daniel. With regard to this issue, the Corporation’s by-laws provide:
[Article IV, Section 1] Directors. The business of the Corporation shallbemanagedby the Directors, who may exercise all such powers of the Corporation as are not by law, by the articles of organization or by the By-Laws required to be otherwise exercised. The Directors may from time to time to the extent permitted by law delegate any of their powers to committees, officers, attorneys or agents of the Corporation, subject to such limitations as the Directors may impose.
[Article IV, Section 2] President The Directors may appoint a President who shall preside at all meetings of the Directors and stockholders and shall have such other powers and duties as customarily belong to the office of President or as may be designated from time to time by the Directors. The President shall have general supervision and control of the business of the Corporation.
[Article IV, Section 3] Vice Presidents. The Vice Presidents, if any, shall have such powers and duties as may be designated from time to time by the Directors or by the President.
[Article II, Section 3] Except as hereinafter provided, the Directors, the President, the Treasurer, the Clerk and the Assistant Clerk shall hold office until the next annual meeting of stockholders and until their respective successors are elected and qualified. Other officers shall serve at the pleasure of the Directors.
[Article II, Section 4] Removal. Directors may be removed from office at any time for cause by vote of a majority of the Directors then in office, and with or without cause by vote of the holders of a majority of the shares entitled to vote in the election of Directors. Officers elected or appointed by the Directors may be removed from their respective offices with or without cause by vote of a majority of the Directors then in office. A Director or officer may be removed for cause only after a reasonable notice and opportunity to be heard before the body proposing to remove him.
On January 21, 2013, Mrs. Weadock and Biyan held a special meeting of the shareholders and directors concerning the removal. Bryan voted to remove Daniel “from all his managerial positions in the company.” Mrs. Weadock voted against removal.
Facts Pertaining to Dissolution Action
Mrs. Weadock is the sole personal guarantor of the LP’s $9.5 million line of credit with Boston Private Bank & Trust Company (the Bank). As of September 9, 2013, the line of credit had an outstanding balance *546 of $8.5 million. The Bank holds a $10 million bond portfolio owned by Mrs. Weadock as collateral for the line of credit. In December 2012, Bryan informed an employee from the Bank that in his capacity as President he would not be approving the extension of the line of credit, which expired on March 31, 2013. Bryan testified at his deposition that he was “not comfortable” signing the credit extension until the issue with Daniel was resolved. Jt.Appx. 25, p. 180. Bryan had previously extended the line of credit each year in his capacity as President. In a letter dated January 11, 2013, the Bank wrote to Bryan, Daniel, and Mrs. Weadock and informed them that if the LP did not extend the line of credit, the LP would need to repay the entire outstanding balance prior to the maturity date of March 31, 2013. On March 5, 2013, Bryan wrote a letter to Mrs. Weadock that stated that he would renew the credit line on behalf of the LP.
The LP holds mortgages on undeveloped lots that are adjacent to the International. Wealy Realty Trust owns the lots. Wealy, LLC is the beneficiary of the Wealy Realty Trust (Wealy Trust). Mrs. Weadock owns 90% of Wealy, LLC and Brian Lynch owns the other 10%. Daniel and Brian Lynch are the trustees. The purpose of the trust is to sell the properties, and the trust documents require the trustees to sell the lots as directed by the trust beneficiaries. The LP must release the mortgage from the lots in order for the trust to be able to sell the properties. Biyan testified that the sale of the lots provided the LP with funds to pay down the credit line and other debts.
In 2012, the Wealy Trust sold a total of three lots, two for $187,500 and one for $199,000. Biyan signed mortgage releases for these properties in his capacity as President, which cleared title and allowed for the sales to proceed. Early in 2013, a developer contacted Daniel and offered to pay $ 125,000 per lot for ten lots. Daniel signed purchase and sales agreements on four of the lots for the price of $175,000. Bryan refused to sign the mortgage releases on these lots on behalf of the LP.
DISCUSSION
Now before the court are motions and cross motions for summaiy judgment in both the removal action and the dissolution action.
I. Summaiy Judgment Standard
Summaiy judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). A party seeking summaiy judgment may satisfy its burden of demonstrating the absence of triable issues either by submitting affirmative evidence demonstrating entitlement to relief, or the opposing party’s lack of entitlement, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of their case. Flesner v. Tech. Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis, 410 Mass, at 716. Once the moving party establishes the absence of a triable issue, the nonmoving party must respond by setting forth specific facts showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e); Kourouvacilis, 410 Mass. at 716. Aparty cannot defeat a motion for summaiy judgment by resting on his or her pleadings and making mere assertions of disputed facts. Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
II. The Removal Action
The Corporation and the LP move for summary judgment in the removal action,[4] and Daniel and Mrs. Weadock bring cross motions for summary judgment. The Corporation and the LP contend that the Corporation’s by-laws permit Biyan to terminate Daniel without a vote of the directors, while Daniel and Mrs. Weadock contend that Biyan has no such authority. Corporate by-laws are a contract between the corporation and its members, Jessie v. Boynton, 372 Mass. 293, 303 (1977), and as such, the appropriate interpretation of by-laws is a question of law which this court may resolve on summary judgment. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002) (“If a contract ... is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment”).
The power of coiporate presidents to act stems from the authorify vested to them by corporate by-laws and boards of directors. G.L.c. 156D, §8.41 (“Each officer has the authorify and shall perform the duties set forth in the by-laws or, to the extent consistent with the by-laws, the duties prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the duties of other officers”). Here, Article IV, Section 2 of the Corporation’s by-laws authorizes the president to undertake the “general supervision and control of the business of the Corporation.” This section also provides that the president shall have the “powers and duties as customarily belong to the office of President or as may be designated from time to time by the Directors.”
The Corporation and the LP argue, that as president, Biyan had the authority to terminate Daniel because a corporation’s president customarily has the authority to hire and fire at-will employees as an exercise of general supervision and management. The Corporation and the LP contend that Biyan terminated Daniel in his capacity as manager of the International, not his capacity as Vice-President, and therefore, explicit approval of the directors was unnecessary to effectuate the termination. However, the court discerns no record support for the proposition that Daniel’s role as Vice President was distinct from his role as manager of the International, and the Corporation and the LP point to none. See Statement of Undisputed Facts Para. 24. It is undisputed that the Biyan and Mrs. Weadock elected Daniel as Vice Pres *547 ident in 2005, and at the same time, they placed him in charge of managing the day-to-day operations of the International. The Corporation and the LP reject the notion that Daniel was put in charge of the International in his capacity as Vice President, noting that the by-laws do not provide that the Vice President has such responsibility. Article IV, Section 3 of the Corporation’s by-laws states that the Vice President “shall have such powers and duties as may be designated from time to time by the Directors or by the President.” The Corporation and the LP are correct that the by-laws do not set out the responsibilities of the Vice President, the by-laws leave the power to assign duties to the directors. However, by assigning Daniel the responsibility of managing the day-to-day operations of the International at the same they elected him as Vice President, the directors were necessarily defining the duties of Vice President to include managing the International. Further cutting against the Corporation and the LP’s argument is the fact that the by-laws do not include a separate provision creating or defining the roles of a general manager. Therefore, the by-laws authorized the directors to assign Daniel, as Vice President, the responsibility of managing the day-to-day operations, and that is exactly what they did.
As it is undisputed that Daniel’s management of the International was in his capacity as Vice President of the Corporation, the court must now resolve whether Biyan’s purported termination of Daniel was effectual. The court concludes that Bryan, acting as President of the Corporation, did not have the authority to remove his brother as Vice President. While Biyan would have the power, as President, to unilaterally designate the powers and duties of Daniel, as Vice President, Article II, Section 4 of the by-laws does not allow the President to remove the Vice President completely without authorization from the Board of Directors. Article II, Section 4 provides: “Officers elected or appointed by the Directors may be removed from their respective offices with or without cause by vote of a majority of the Directors then in office.” It is undisputed that no vote took place prior to Biyan sending the termination notice. Accordingly, Biyan’s termination of Daniel as Vice President was ineffectual and the Corporation and the LP are not entitled to the permanent injunction they seek.
While the parties fail to cite any on-point mandatoiy authority, and the court is unaware of any, the court’s above conclusion fits squarely with general principles of corporate law that the parties have brought to the court’s attention. Mainly, “where another employee or officer is hired by the board of directors, only the board of directors has the authority to terminate that particular or officer.” 2 William M. Fletcher, Fletcher Cyclopedia of the Law of Corporations §466.10 (2006), and cases cited n.7.[5] It follows from this proposition that, “(a)bsent express authority, the president of a corporation has no power to remove an officer appointed by the board of directors where the power of removal is in the board . ..” 2 William M. Fletcher, supra at §357.
Here, Biyan acting as president, had no express authority to remove Daniel, who was appointed by the board of directors. As the body putting Daniel into office, the board of directors had inherent and exclusive authority to remove Daniel absent a delegation of that authority. There is no evidence in the summary judgment record that the board of directors conferred its authority to remove Daniel on Biyan. Nor would such a delegation have been effective pursuant to Article II, Section 4, which requires a majority vote of the directors to remove an officer, such as Vice President. As no vote occurred removing Daniel from office, Biyan’s purported termination of Daniel on January 10, 2013, was ineffectual. Accordingly, the court will allow Daniel and Mrs. Weadock’s cross motions for summary judgment in the removal action.
III. Dissolution Action
The Corporation also moves for summary judgment in the dissolution action, contending that dissolution is inappropriate because the Corporation is not deadlocked. Mrs. Weadock brings a cross motion for summary judgment, arguing that the Corporation is deadlocked.
In the removal action, Mrs. Weadock brings a petition for judicial dissolution pursuant to G.L.c. 156D, §14.30. Section 14.30(2) permits a shareholder owning at least 40% of the corporate shares to petition the court for dissolution. Under §14.30 there are two potential grounds for dissolution: (1) deadlock in the management of corporate affairs, or; (2) deadlock in voting power. Mrs. Weadock proceeds under the first ground, claiming that she and Biyan are hopelessly deadlocked as to the management of the International. To prevail on her petition, Mrs. Weadock, as the complaining shareholder, must establish that: “the shareholders are deadlocked in the management of corporate affairs, the shareholders are unable to break the deadlock, and irreparable injuiy to the corporation is threatened or being suffered ...”
Biyan is prepared to substitute Daniel’s management of the International for a professional management company. Mrs. Weadock voted against removing Daniel at a meeting of the shareholders and directors on Januaiy 21, 2013. However, according to Biyan’s affidavit, in August 2012, he and his mother conferred and they agreed that they should remove Daniel at the end of the 2012 season, before Mrs. Weadock reconsidered her position.
There is clearly some tough bargaining occurring between the co-directors, with Bryan bringing the corporate line of credit to the brink, endangering Mrs. Weadock’s bond portfolio. Biyan also refuses to sign mortgage releases for the Wealy Trust lots. See Rowley Auto Parts, Inc. v. Bontos, 2009 Mass.Super. LEXIS *548 178, at *5 (Lu, J.) [25 Mass. L. Rptr. 607] (noting significant discord and inability to consent to other parties’ actions can result in deadlock). However, dissolution is a draconian measure, which the court should not impose lightly. See M.G.L.A. c. 156D, §14.30 cmt. 2 (“involuntary dissolution should be available as a mechanism for resolving internal corporate disputes only in the case of true deadlock, and even then only when continuation of the deadlock will impose real and serious harm, and also that significantly broader availabiliiy of this remedy in such circumstances invites gamesmanship in the negotiation of internal corporate disputes and makes the dissolution remedy available in circumstances which nothing so extreme is required or, in the end, normally consummated”). That being said, with the limited record before the court, the court cannot find definitively that there is a hopeless deadlock as to the management of the corporation; this remains a genuine issue of material fact.[6] Given Bryan’s ultimate concession to renew the line of credit and Mrs. Weadock’s apparent vacillation, there remains an issue of material fact as to whether there is true deadlock.
There also remains a genuine issue of material fact as to whether irreparable injury to the corporation is being threatened or being suffered, which precludes the resolution of Mrs. Weadock’s petition for dissolution by summary judgment. It is unclear from the summary judgment record whether Daniel’s management of the International threatens or is causing irreparable injury to the LP. There is also an issue of material fact as to whether Bryan’s refusal to sign the mortgage releases on the Wealy Trust lots is threatening irreparable injury. There is evidence in the record that the LP uses the sale of these lots to service its debt. If the corporation is unable to service its credit line this could be the level of harm required by G.L.c. 156D, §14.30 for dissolution.
ORDER
For the foregoing reasons, Arklow, Inc. and Arklow Limited Partnership’s Omnibus Motion for Summary Judgment is DENIED in the removal action (WOCV2013-0063); Daniel Weadock and Florence Weadock’s Motions for Summary Judgment are ALLOWED in the removal action; Florence Weadock’s Motion for Summary Judgment is DENIED in the dissolution action (WOCV2013-0306); and Arklow, Inc. and Arklow Limited Partnership’s Onmibus Motion for Summary Judgment is DENIED in the dissolution action. The court shall schedule the dissolution action for trial.

Previously, Mrs. Weadock raised the issue of Bryan’s authority to bring the removal action on behalf of the corporation via a motion to dismiss. The court (McCann, J.) denied the motion, reasoning that a more expansive record was necessary to resolve the issue. Mrs. Weadock has not renewed this argument upon summary judgment, perhaps realizing that this argument would not carry the day. See Lydia E. Pinkham Med. Comp. v. Gove, 298 Mass. 53, 65 (1937) (holding president may initiate lawsuit without authorization of stockholders).

For example, the parties discussed Fournier v. Fourier, 479 A.2d 708 (R.I. 1984) in their memoranda of law and during oral arguments, which is cited in footnote 7. In Fourier, the court held that one brother who is president and manager of a close corporation could not unilaterally terminate his brother who is vice president and assistant manager without an affirmative vote of the shareholders. 479 A.2d at 713.

The second prong of the analysis, whether the shareholders are able to break the deadlock, is inconsequential in this case where the same two directors are also the only shareholders. See Constantine v. Lawnicki, 2007 Mass.Super. LEXIS 328, at *5 (2007) (van Gestel, J.) [22 Mass. L. Rptr. 745).